McGrew vs. Hart.

JOHN C. McGREW *vs.* BENJAMIN HART.

*Error from Marengo Circuit Court*—Before the' Hon. H. W. COLLIER.

As a general principle, the claimant of property levied upon under an execution, cannot be permitted to intepose the title of a third person to defeat the execution, when his own title has failed.

But where a claimant possesses an undivided interest in the property levied upon; as where such property belongs jointly to the claimant and an infant, or to some third person not a party to the suit; this case would form an exception to the general rule, and authorise the interposition of the circumstance of the title, to show that the defendant' in execution had none.

This case came before the court on a bill of exceptions, which disclosed the following facts.

On the twenty-ninth day of March, 1830, an execution was issued from the office of the clerk of the Circuit Court of

Greene county, in favor of Benjamin Hart, against the property of James L. Philips. This execution was levied by the sheriff of Marengo, upon certain negro slaves, as the property of Philips, which slaves were claimed on oath by John C. McGrew, as his own estate, and a bond given to try the right of property. On the trial, the plaintiff in execution, proved by the testimony of one Hayes, that the negroes levied on had been in the possession of Philips, for several years, and that during that time, Philips had exercised acts of ownership over them as his own. It further appeared, that Hart having filed his bill in chancery against Philips, obtained an order directing the sheriff of Greene county, to seize upon a certain amount of Philips's property, and to retain the same until Philips should execute a bond conditioned to have the property forthcoming, to abide the decree that might be rendered in the cause. The negroes in dispute were seized on by the sheriff under the above mentioned order, and McGrew, the claimant, became the surety of Philips in the bond required—where the slaves were described as the property of Philips.

The claimant introduced in evidence, a transcript of the records of Washington Circuit Court, showing, that at the May term of said court, in the year 1822, a judgment was recovered against James L. Philips, in favor of John McGrew, administrator of William McGrew's estate, for the sum of six thousand two hundred and eighty six dollars and thirty cents, besides costs of suit. John C. McGrew and William P. McGrew were heirs and distributees of William McGrew's estate, and it was proved, that John C. McGrew had agreed to receive from John McGrew, the administrator of his father's estate, the judgment against Phillips, before mentioned, on account of what might be due to him and his younger brother, William P. McGrew, from their father's estate ; also, that the aforesaid administrator had authorised the said John C. McGrew to collect and appropriate the judgment accordingly. The claimant further proved by the testimony

of John McGrew, that the amount of the said judgment was justly due and owing from Philips to the estate of William McGrew; that the claimant and his brother William P. McGrew, were the only children of their father; and that Philips claimed that certain off sets existed in his favor against the note, on which the aforesaid judgment had been rendered, but that at the time of the said transfer, Philips had paid nothing on the same. The claimant likewise produced in evidence, a bill of sale in the following words, to wit:

The State of Alabama, } Know all men by these pre-
Marengo County. } sents, that James L. Philips, of the county of Greene, and state aforesaid, for and in consideration of a judgment in favor of the heirs of the estate of William McGrew, deceased, against me, have bargained and sold unto John Clarke McGrew, the following negroes, to wit: Oliver, a boy about six years old, Tom, a negro boy about seven years old, Granville aged about five years, Jerry a negro boy about three years old, Nero, a negro boy about eighteen months old, Caleb about nine years old, Stephen about eight years old; and the following negro girls and negro women—Phillis aged about twenty one, Milly aged about nineteen, Rachel aged about twenty two, Leona aged about six years old, Biner aged about seven, Mary aged about sixteen years—being six girls and women, and seven negro men and boys; together with one hundred head of cattle; which property I warrant and defend from the claim or claims of all persons whatsoever, and I also warrant them all to be sound and well. This condition of this bill of sale, is such— the said James L. Philips will abide a final settlement with the heirs of said Col. William McGrew, then this bill of sale to be void, otherwise to remain in full force and virtue. In testimony whereof, I have hereunto set my hand, and affixed my seal, this thirteenth day of August, 1822.

JAS. L. PHILIPS, (Seal.)

Witness,
GEORGE CUNNINGHAME.

23

McGrew
vs.
Hart.

The execution of this bill of sale was proved by the probate taken thereon, on the 7th October, 1828—and the same had been recorded in the clerk's office of Marengo county court, on the 25th February, 1829. It was in evidence that Philips married the widow of William McGrew, deceased, and mother of the claimant; that at the time the deed was executed, and for some time afterwards, the claimant lived in the family of Philips—that he removed thence about the year 1823 or 1824, when he became of age, leaving in the possession of Philips the negroes in dispute—that he did not take them into his possession until about three years before this evidence was given, and until after the seizure under Hart's bill, since which time the negroes had remained in possession of the claimant—and that he had before this time other negroes and was farming. A transcript from the records of the county court of Clarke, was produced on the part of the claimant, showing a division by commissioners, duly appointed by that court, of the negroes belonging to the estate of William McGrew, deceased, by which a part of the negroes now in controversy, were assigned to John C. McGrew and William P. McGrew jointly; at which time William P. McGrew was a minor. There was no evidence of any division between John C. McGrew and William P. McGrew, of the negroes assigned to them jointly, except that some of them were understood to be the property of William P. McGrew, and others the property of John C. McGrew. It was proved that John C. and William P. McGrew lived together, and claimed seperately certain of the slaves in question.

On this state of the facts, the court charged the jury—

1st. That if a party who has a conveyance of property, omits to take possession of the same within a reasonable time after the right to the possession accrues, it is presumptive evidence of fraud; and that if McGrew, the claimant, omitted to take possession of the property mentioned in the conveyance, executed by Philips to him, within a reasona-

ble time—or omitted to make any exertions to obtain it within a reasonable time after he became of age, it was presumptive evidence that the conveyance was fraudulent.

2d. That if the property, or any part of it, belonged jointly to John C. McGrew and William P. McGrew, the claimant could not sustain his claim to such part, and that it would then be their duty to find it subject to the plaintiff's execution.

3d. That the claimant could not be permitted to defeat the claim of the plaintiff in execution, by showing that the right and title to the property levied on, were in any person other than himself. The claimant then requested the court to charge the jury, that if they believed that John C. McGrew and William P. McGrew had, by any understanding between themselves, divided the negroes allotted to them jointly, that such understanding would be sufficient to vest in each, individually, the part allotted to him under such understanding. The court refused to give this charge, and instructed the jury, that William P. McGrew, being a minor, was incapable of assenting to any such division.

To these opinions of the court, there being a verdict subjecting certain of the negroes to execution, the plaintiff in error excepted, and now assigns the same in this court.

By Mr. Chief Justice LIPSCOMB:

This was an action to try the right of property.

The property was levied on as the estate of Philips, and claimed by Mr. McGrew. The facts of the case are represented by a bill of exceptions, and in substance are—that an execution issued from the office of the Circuit Court of Greene county, on the twenty-ninth March, 1830, in favor of Hart, against James L. Philips. The execution was levied by the sheriff of Marengo county, on certain slaves, as the property of the said Philips, which were claimed by John C. McGrew as his property. On the trial of the issue, the plaintiff in the execution proved that the slaves had been for several years

*McGrew vs. Hart.*

McGrew
vs.
Hart.

in the possession of Philips, and that he had been in the habit of exercising ownership over them. It further appeared, that Hart having filed his bill in chancery, in the Circuit Court of Greene county, against Philips, obtained an order from the chancellor, directing the sheriff of Greene county to seize upon, and take into his possession, the property of Philips, to an amount specified in the same order, and to hold the same till Philips executed his bond with security, conditioned, that the property thus seized, should be forthcoming, to answer such decree as might be rendered, &c. The negroes in question were seized on by the sheriff, under the order before mentioned, and McGrew the claimant, became the surety of Philips in the bond required, in which bond they were described as the property of Philips. On the part of the claimant of the property, a transcipt of a record from Washington Circuit Court was introduced, showing, that at the May term, 1822, of said court, a judgment was recovered in the said court, by John McGrew, as administrator of William McGrew, deceased, against James L. Philips, for the sum of six thousand two hundred and eighty six dollars and thirty cents, besides costs of suit. It appeared that John C. McGrew and William P. McGrew were the heirs and distributees of the estate of William McGrew, deceased. It was further proved, that John C. McGrew agreed to receive from John McGrew, the administrator of his father's estate, the judgment against Philips, before mentioned, on account of what might be due to him and his younger brother, William P. McGrew, from the estate of their deceased father ; and that the said administrator authorised him the said John C. McGrew to collect and appropriate said judgment accordingly. The claimant further proved, by the testimony of John McGrew, that the amount of said judgment was justly due and owing from Phillips, to the estate of William McGrew, deceased, and that the claimant and his brother William P. McGrew, were the only children of the deceased ; that Philips claimed that off sets existed in his favor against the note

on which judgment was rendered, but had paid nothing at the time it was transferred. The claimant further produced a bill of sale from Philips to himself, for the said slaves, bearing date the 13th August, 1822, conditioned to be void if the said Philips would abide a final settlement with the heirs of Col. William McGrew. The execution of this deed was proved by the subscribing witness, on the 8th of October, 1828, before Thomas Ringold, Judge of the County Court, and recorded in the office of the clerk of the County Court of Marengo county, on the 25th February, 1829. It further appeared, that Philips married the widow of William McGrew, and the mother of the claimant; and that about the time of the execution of the deed, and for some time afterwards, the claimant lived most of his time in the family of Philips; that he removed from Philips's about the year 1823 or 1824, about which time he came of age, leaving in the possession of Philips, the negroes in dispute, and that they were not taken possession of by him until about three years before the trial—until after the seizure under the bill of Hart; since which they had continued in his possession. That after he removed to Marengo county, and before he obtained possession, he was farming, and had a plantation and other negroes in possession. The claimant further gave in evidence, a transcript from the records of the County Court of Clarke county, showing a division, by commissioners duly appointed by said court, of the negroes belonging to the estate of William McGrew, deceased, in which, a part of the negres now in controversy, were assigned to John C. McGrew and William P. McGrew jointly; and it appeared that William P. McGrew, at the time of making such division, and now, is a minor under the age of twenty one years. There was no evidence of any division between John C. McGrew and William P. McGrew, of the negroes assigned to them jointly, except that some of the negroes were understood by witness to be the property of William P. McGrew, and others

McGrew
vs.
Hart.

to be the property of John C. McGrew—that they lived to-gether and claimed separately, certain of the negroes.

Under these facts, the court charged the jury, that if a party who has a conveyance of property, omits to take possession of it within a reasonable time after the right to the possession accrues ; it is presumptive evidence of fraud : and if McGrew, the claimant, omitted to take possession of the property, mentioned in the conveyance, executed by Philips to him, within a reasonable time—or omitted to make exertions to obtain it within a reasonable time after he came of age, it was presumptive evidence that the conveyance was fraudulent. The court further charged the jury, that if the property, or any part of it, belonged jointly to John C. McGrew and William P. McGrew, the claimant could not sustain his claim to such part ; and that it would be their duty to find it subject to the plaintiff's execution—that claimant could not be permitted to defeat the claim of the plaintiff in the execution, by showing, that the right and title to the property levied on, was in any other person than himself. The claimant, by his counsel, requested the court to charge the jury, that if they believed that John C. McGrew and William P. McGrew had, by any understanding between themselves, divided the negroes allotted to them jointly, that such understanding, would be sufficient, to vest in each individually, the part allotted to him by such understanding—which the court refused, and instructed the jury, that William P. McGrew being a minor, was incapable of assenting to such a division.

The assignment of errors embraces all the points of law growing out of the bill of exceptions.

The first question of law arising out of the charge, is abstract, and not material to the issue. It could not be important on the trial of that issue, whether the deed from Philips to the claimant was supported by a good consideration, and was a fair and *bona fide* transaction or not—since, according to the case of *McGregor & Darling* vs. *Hall*, the property secured by the deed to the claimant, was not protected from an

execution against Philips, and it would have been liable to be sold, subject to the claimant's lien. It was nothing more than a mortgage to secure the payment of a debt. But, as the case of *McGregor & Darling* vs. *Hall*, had not then been decided, we may presume, that the judge in the court below, was then of opinion, that the deed, if fair and *bona fide,,* fully protected the property conveyed, from an execution against the maker ; that in fact, it vested the legal title in the claimant, and could not be made liable for Philips' debts, until the fairness of the deed had given way before the impeachment of fraud. In this aspect the charge would have been pertinent ; but if that had been true, there seems to have been no error in the charge that if *McGrew omitted taking posses-sion*, or making efforts to acquire the possession within a reasonable time after coming of age, such neglect or omis-sion would form a presumption that the transaction was fraudulent. This we believe would have been the sound law, if the validity of that deed had been at all necessary to the issue before the court. If he had been of age for several years, and took no steps to acquire possession; and no good and satisfactory reason is shown why he had not, the pre-sumption would have been so strong against him, that it would have been difficult, on any known principle growing out of such transaction, for the jury to have resisted its influ-ence.

The second charge given by the court, is the one most re-lied on by the counsel for the plaintiff in error, to reverse the judgment. It is, " that if any part of the property belong-ed jointly to John C. McGrew claimant, and William P. McGrew—that the claimant could not sustain his claim to such part." The judge in this charge, among other conside-rations, proceeded on this principle, that the claimant of the property levied on under execution as the property of the de-fendant in the execution, could not be permitted to interpose the title of a third person to defeat the execution. The cor-rectness of this principle, we shall not controvert, as we be-

McGrew
vs.
Hart.

lieve it to be correct as a general principle.   If the claimant
has no title himself, it would be officious intermedling on his
part, to interpose the title of a third person to arrest the ex-
ecution ; and it does not come within the issue, to show that
although he has no title himself, yet that there is a better out-
standing title in some third person, than in the defendant in
the execution.   Another consideration may have influenced
the judge, that, as according to the doctrine of joint owners
and copartners, if a judgment is recovered against one joint
owner or partner, for his individual debt, execution may run
against the joint property, for the purpose of subjecting to
the satisfaction of such judgment, the share or interest to the
defendant in such property ; and that as the claimant had no
right to shield the property from execution by interposing any
title but his own : admitting he had an undivided interest—
the plaintiff was nevertheless entitled to his execution.   To
carry the principle to this extent, would be productive of
great mischief and injustice.   It would be subjecting proper-
ty, in which the defendant in the execution has not the least
possible interest, and to which he may never have had the
slightest shadow of title, to the satisfaction of such execu-
tion.   So far as William P. McGrew is concerned, the judg-
ment on the issue, under the charge of the court, would not
have impaired, or in any manner affected his rights.   But
not so as to the claimant.   The verdict and judgment would
have forever bound his rights.   It may however, be said, that
if injustice is done to the claimant, it is of his own seeking—
that he ought to have claimed the property as the joint pro-
perty of himself and his infant brother.   But we may sup-
pose a case where the claimant might know that his right to
the one half was good, and might verily in truth and honesty
believe the other half was also his own ; but if on the trial it
should be made to appear that one undivided half did not be-
long to him, nor to the defendant in execution, but to some
third person, not a party to the suit ; we surely would not
subject him to such serious consequences as would result from

the charge of the judge. If the property were proved to be that of the claimant, and the defendant in the execution, when the whole of it had been claimed by the claimant, a perplexing question would arise. The interest of the defendant in the execution would certainly be liable ; and the claimant could not avoid the legal consequences of a judgment against his claim by dismissing it on the trial. This he is prohibited from doing by the statute, without the consent of the plaintiff in execution. Whether the difficulty could be avoided, and the consequences averted by an application to the court for a new trial—and such modification of the issue, as would authorise the jury to find the interest of the defendant in the execution alone liable ; or whether the jury would not be authorised to find the property liable, to the extent of the defendant's interest on the first issue, are questions not directly before us.

The last charge prayed, was, that if the claimant and William P. McGrew, had, by any understanding between themselves, divided the negroes allotted to them jointly, that such understanding must be sufficient to vest in each, individually, the part allotted to him by such understanding. This charge, we believe the court correctly refused, on the ground that no such understanding could be entered into by William P. McGrew. The rule, that infancy is a personal privilege, is admitted ; subject, like all other general rules, to exceptions. It is believed to be subject to less restriction between the infant and the party contracting with him. It cannot always prevail, when other persons are to be affected by it. Suppose that John C. McGrew and his infant brother had exchanged property—would it be contended that a plaintiff in an execution against John C. McGrew would be bound by such contract? If he levied on the property given by the infant in exchange, the property would not sell for its value, on account of the uncertainty, whether the infant would con-

McGrew
vs.
Hart.

24

firm the exchange on his coming of age. This, and the like, would entirely form exceptions to the general rule.

The bill of exceptions is somewhat vague, and does not sufficiently show the pertinency of some of the charges given; and some refused; but we believe, that on the second charge given, the court erred; and, as it is possible the verdict was founded on that part of the charge, for that error the judgment ought to be reversed, and the cause remanded.

It was, however, contended, that the verdict must have been the same, without the charge supposed to be erroneous, and that therefore, the judgment ought not to be disturbed. The fact, that the claimant had been bound as security for Philips to deliver this same property to satisfy such judgment and decree as Hart, the plaintiff in the execution, might recover, &c. would prevent him from afterwards setting up a claim in his own right. There is certainly much force in this argument, and it would be a mockery of justice after he had bound himself, when this property was seized on as Philips' under the order of the chancellor, to see that Philips should have it forthcoming to answer such decree as should be rendered; to allow him, now that a decree has been rendered against Philips in the very case, to interpose a claim of his own to prevent a satisfaction of that decree when the property was seized under the order of the chancellor. If he had asserted his title, the probability is, that the sheriff would have seized other property. If he was silent, such silence would amount to a waiver of his right. We do not know, however, but there may have been other testimony. The bill of exceptions does not assume to spread it all on the record, nor do we know that the case turned on that question. It may have been that that a reservation of his own individual title to the property was made expressly, at the time of the seizure; or it may have been in proof, that Hart had released the claimant from the consequences of his bond, as surety for Philips. If the bond stood alone, unexplained, we might pass on the legal effect of it, and say, that it was of itself suf-

ficient to support the judgment, but as this may not have been the, case, we reverse the judgment, as before mentioned, on the second charge in tne bill of exceptions—and remand the case to the court below.