# Lehman, Durr & Co. v. Warren & Burch.

| 53 | 535 |
| 110 | 241 |

### Trial of Right of Property.

1. *Trial of right of property; when may be maintained.*—The statutory remedy for the trial of the right of property levied on under judicial process, is merely cumulative to the common law remedy by action of trespass against the officer levying the process, or of *trover* or *detinue* against those obtaining possession from him, and can be maintained only when one of these actions could be supported at common law.

2. *Same.*—A factor or broker, having actual possession of property belonging to his principal, may interpose and maintain a claim in his own name, under the statute, against one not in condition to set up the principal's title.

3. *Same; what proper issue on.*—On a trial of the right of property, the only proper issue is an affirmation by the plaintiff in the process that the property levied on is subject to the process, and a denial of that fact by the claimant. It was not contemplated that the proceeding should be embarrassed by formal pleadings in the form of complaint, or plea, replication or rejoinder.

4. *Revised Code, § 1164 of; construed.*—Under the provisions of the Revised Code, § 1164 (which changes the common law rule as to the passing of title to personalty sold, when a sale of cotton is made by a commission merchant to a buyer or broker for cash, elsewhere than in the city of Mobile), without an express agreement to the contrary, the title of cotton will not pass by delivery, or any other act than the payment of the purchase money, as between the purchaser or his attaching creditor.

5. *Same.*—What effect a delivery would have upon the title of the commission merchant, where the purchaser sells or transfers the cotton to another, or where the commission merchants were not pursuing that business but acting outside of it in the particular transaction, are questions not presented or decided in this case.

[Lehman, Durr & Co. v. Warren & Burch.]

6. *Title to goods; what does not work change of.*—The fact that commission merchants have advanced upon goods consigned to them for sale more than their value, and have a right, or have made an express agreement authorizing them to sell and apply the proceeds to payment of the advances, does not work a change in the title, or alter their relations to the customer.

7. *Lien; rule as to parting with possession of goods; to what has no application.*—The general rule that a factor or commission merchant loses his lien, if he parts with the possession of goods after the lien attaches, has no application to a sale of cotton made by a commission merchant to a buyer or broker in the city of Montgomery, under the provisions of section eleven hundred and sixty-four of the Revised Code.

8. *Charges; how construed.*—Charges given or refused must be construed, and their correctness determined by connection with the evidence to which they are applied. A charge that the jury may draw an inference opposed to all the evidence is erroneous, so also is a charge that they may infer a fact of which there is no evidence.

APPEAL from Circuit Court of Montgomery.

Tried before Hon. JAMES Q. SMITH.

This was a trial, under the statute, to the right of property to six bales of cotton, between Lehman, Durr & Co., claimants and appellants, and appellees, Warren & Burch, attaching creditors of "D. L. Campbell & Co.," who afterwards recovered judgment against D. L. Campbell & Co. in the attachment suit. The affidavit of claimants was made by Durr, a member of the firm, who states therein that the six bales levied on "is not the property of D. L. Campbell & Co., but is the property of Lehman, Durr & Co., and that they have a just claim to the property levied on."

The plea of the attaching creditors "alleges that the property levied on is the property of the defendants and liable to the satisfaction of said attachment." The claimants denied this, and alleged that "at the time said cotton was levied on, it was not subject to said attachment, and that at that time it belonged to them as commission merchants, they holding the said cotton subject to lien for advances," &c. The plaintiffs in attachment replied, and alleged that " the cotton had been claimed by claimants, in their written claim, as their individual property." Claimants by way of rejoinder alleged that, although their written claim was general, they now had the right, and in their evidence, to show the particular or special character in which they did claim. "Upon the issue above shown," there was a jury trial, and verdict for plaintiffs in attachment.

Lehman, Durr & Co. were commission merchants, in the city of Montgomery, and D. L. Campbell was a cotton buyer doing business in the same city. The testimony showed that the six bales in controversy, together with forty-seven other bales, had been hauled by Campbell's drayman from the warehouse of Lehman, Durr & Co., on his order, to the de-

VOL. LIII.

[Lehman, Durr & Co. v. Warren & Burch.]

pot of the Montgomery and Mobile Railroad Company, where it was awaiting shipment to New Orleans, on Campbell's account, when the attachment was levied on it.

The testimony upon the part of claimants showed that Campbell had purchased forty-seven bales of the cotton of Lehman, Durr & Co., paid for them, and received an order for their delivery. Needing six bales more to complete his shipment, he applied to Lehman, Durr & Co. to purchase it, and their clerk instructed the warehouse-keeper "to turn out six bales in the yard" for his inspection. It was the custom of Lehman, Durr & Co. to collect payment before delivering cotton. Campbell's drayman having called for his cotton, the warehouse-keeper, without knowing whether the cotton had all been paid for or not, "on his own responsibility," delivered the fifty-three bales. The six bales were never paid for, and at the time of the sale were in possession of Lehman, Durr & Co. for sale as commission merchants, they having made advances on it, in excess of its value, to Farris & McCurdy, the owners, who authorized Lehman, Durr & Co. to sell the cotton and apply the proceeds in extinguishment of their debt.

This was all the evidence.

The court charged the jury, "if the claimants as commission merchants sold the cotton in controversy in the city of Montgomery to D. L. Campbell, and if D. L. Campbell was then a cotton buyer in said city and claimants commission merchants, and D. L. Campbell never paid for the cotton, then the jury should find for the claimants; but if the sale to D. L. Campbell was made by claimants as individuals, and not as commission merchants, the jury must find for the plaintiffs." The claimants excepted to this charge.

The court, at the request of the plaintiffs, also charged the jury, in substance, that if Lehman, Durr & Co. sold the six bales to Campbell, and that if the sale was made by Lehman, Durr & Co. for their own individual account, then the jury must find for the plaintiffs; and also, that if the proceeds of the sale belonged to Lehman, Durr & Co., and not to Farris & McCurdy, or any other person than Lehman, Durr & Co., then the plaintiffs were entitled to recover.

The claimants excepted to these charges, and requested the court in writing to charge the jury as follows: "If D. L. Campbell, a defendant in the attachment, was a cotton buyer in the city of Montgomery; if the claimants were commission merchants; if whilst said Campbell was such cotton buyer, and whilst said Lehman, Durr & Co. were such commission merchants, the cotton in controversy was sold by

[Lehman, Durr & Co. *v.* Warren & Burch.]

Lehman, Durr & Co. as commission merchants to said Campbell in the city of Montgomery; if said cotton so sold has never been paid for by said Campbell or any other person, and if said cotton was levied on under said attachment within some short time after said sale, and before any payment was made, then upon this state of facts the said Campbell did not acquire the ownership of said cotton under said sale."

Another charge, based upon the same state of facts as above, was asked, instructing the jury that upon that state of facts, they must find for the claimants, although before the levy the cotton had been placed at the railroad station by Campbell's order or request, with the intent on his part to ship the same by railroad.

The court refused to give either of these charges, and claimants excepted. The charges given, and the refusal to charge as requested, are now assigned as error.

RICE, JONES & WILEY, for appellant.

BRAGG & THORINGTON and WATTS & TROY, *contra.*

BRICKELL, C. J.—Before the statute, authorizing the interposition of a claim to property levied on by attachment, or execution, and a trial of the right to such property, whether it was in the claimant, or in the defendant in the process, the remedy was by an action of trespass against the officer levying the process, or of trover or detinue, against him, or those obtaining possession from him. The statutory remedy is cumulative, and can be maintained only when one of these actions could be supported at common law. It follows that, as in these actions the plaintiff must have recovered on the strength of his own title, and not on the weakness of the defendant's, he cannot, in support of a claim under the statute, show that the right and title to the property levied on is in any other person than himself, unless he connects himself and his possession with such title. *McGrew* v. *Hart*, 1 Port. 175; *Frow & Ferguson* v. *Downman*, 11 Ala. 880; *Foster* v. *Smith*, 16 Ala. 192; *Thomas* v. *Degraffenreid*, 17 Ala. 602.

On a trial of the right of property, the only proper issue is an affirmation by the plaintiff in the process, that the property levied on is subject to the process, and a denial of that fact by the claimant. R. C. § 3017; *Langdon & Co.* v. *Brumby*, 7 Ala. 53. Such an issue is sufficiently comprehensive, to authorize the plaintiff to introduce evidence of

[Lehman, Durr & Co. v. Warren & Burch.]

every fact showing the property liable to the process; and the claimant to give evidence of every fact showing that there resides in him a superior right to the property. It was never intended the proceeding should be embarrassed by formal pleading, either in the form of complaint, or plea, or replication, or rejoinder. The introduction of such pleading tends only to confusion, and to mar the simplicity of the proceeding, as it is authorized by the statute. The affidavit serves its purpose, when with a proper bond by the claimant it arrests the action of the officer, and introduces the claim into court as a pending suit. Its statements can neither enlarge nor narrow the issue, which the statute requires to be made up, and it is not probably required for any other reason than as an affirmation of the good faith of the claimant in instituting the proceeding. We shall consider this case as if the issue had been formed in conformity to the views we have expressed.

The claimants were commission merchants in. the city of Montgomery, and as such received for sale from Fariss & McCurdy six bales of cotton, having made to them advances exceeding its value. They sold the cotton to one Campbell, a cotton buyer, one of the defendants in attachment, and he obtained possession and was about shipping it, when the levy was made. Whether there was a delivery of the cotton to Campbell, by authority of claimants, was a matter about which the evidence was conflicting. He had not paid for the cotton, and had previously bought cotton of claimants and paid for it.

The court, ex mere motu, charged the jury, if they believed from the evidence that claimants sold the cotton to Campbell for their own account, they must find for the plaintiff. On request of plaintiffs the court charged the jury, if they believed from the evidence that claimants sold the cotton to Campbell, and the proceeds of sale belonged to them, and not to any other person, they must find for the plaintiffs. The court refused, on request of claimants, to charge the jury, if they believed from the evidence the claimants were commission merchants, and sold the cotton to Campbell, a cotton buyer, and he had not paid for the cotton, he did not acquire ownership thereof. To the charge given, and the refusal to charge, exceptions were reserved. The sale to Campbell was for cash, but according to the usages of trade, he had three days to examine the cotton before paying for it, which had not expired when the levy was made.

The statute (R. C. § 1164) provides: "No cotton sold by commission merchants to brokers or buyers shall be con-

sidered as delivered and the ownership given up until the same is fully paid for."' It is a very general rule of the common law, that by the mere contract of sale, the property in the thing sold passes to the vendee, though he is not invested with a right to the possession, if no credit is agreed upon, until he pays or tenders the purchase money. *Magee* v. *Billingsley*, 3 Ala. 679. No material act remaining to be done before delivery, to distinguish and identify the thing sold, or to ascertain the price thereof, the sale was perfect, the thing was at the risk of the buyer, and if it perished without fault on the part of the seller, the buyer was bound to pay the price. If the sale was not on credit, the vendor had the right to retain possession until the price was paid. This right was lost by a surrender of possession to the vendee. Story on Sales, §§ 286–88. The statute to which we have referred was intended to operate a change of these common law rules, when a sale of cotton was made by a commission merchant to a broker or buyer, and to substitute as the condition on which the title should be transferred the full payment of the price. Until then property in the cotton is not changed. The vendor, if a commission merchant, retains the title he had before and at the time of the contract of sale, and the buyer acquires only a right to complete the purchase, and invest himself with the title, by the payment of the price. This seems to us the only meaning of which the words of the statute are susceptible, and that such was the intention of the legislature is clear, when the statute as it was originally passed, and as it was subsequently modified, is examined. The original statute was approved February 10th, 1852, and may be found in Pamph. Acts of 1851–2, p. 44. The first section is in these words: "That from and after the passage of this act, all cotton sold by commission merchants to brokers or buyers, shall not be considered as delivered and the ownership given up until the same shall be fully paid for; *any order for the cotton, law, custom or usage to the contrary notwithstanding.*" The last clause of the section was omitted in revising the Code, but its omission does not lessen its significance in determining the intention of the legislature, or in fixing the meaning of the words of the statute. In 1858 (Pamph. Acts, 1857–8, p. 58), a statute was passed effecting a modification of this general law, so far as sales of cotton in the city of Mobile are concerned, providing that on such sales by a commission merchant or factor, the sale was complete, and the legal title vested in the purchaser, when the cotton was delivered, or an order on a warehouseman, with whom it was stored, was

given to the purchaser, but reserving to the seller for fifteen days a lien on the cotton for the price, paramount to any sale or transfer by the purchaser. This modification proceeds on the theory of the general law we have expressed— that when a sale of cotton was made by a commission merchant to a broker or buyer, the title remained as it was before the sale, unaffected by it, until the purchase money was fully paid, and that the buyer acquired by the contract a mere right to invest himself with the title on paying or tendering the purchase money. It is not a mere lien, as at common law, which remains in the seller, continuing so long only as he retains possession, but it is the title, absolute, unqualified, unaffected by the contract of sale, which can be divested only by paying or tendering the purchase money. It was probably found the law did not operate well in the city of Mobile, and the modification of it was to make the sale, accompanied by delivery, pass title to the purchaser, and to give the buyer a lien, in lieu of title, for the purchase money, for fifteen days. When a sale of the cotton is made by a commission merchant to a broker or buyer, for cash, elsewhere than in the city of Mobile, without an express agreement to the contrary, the title of the cotton will not pass by delivery, or by any other act than the payment of the purchase money. If there is delivery to the purchaser, questions may arise between the seller and persons to whom the purchasers may transfer, this case does not present for consideration. It is enough that, as to an attaching creditor of the purchaser, the title does not pass, to settle all questions now involved.

Charges given or refused must be construed, and their correctness determined, by connection with the evidence to which they are applied. A charge to the jury, that they may draw an inference opposed to all the evidence, is erroneous. *Carey* v. *Hughes*, 17 Ala. 388. Or, a charge that they may infer a fact of which there is no evidence, is erroneous. Thus, that the jury could infer from the acts of the creditor, that sureties had knowledge of, and assented to an extension of the day of payment to the principal, no evidence of such knowledge or assent having been given, was error. *Everett* v. *U. S.*, 6 Port. 166. It may be true that though the business of the claimants was that of commission merchants, yet, if in the sale to Campbell they were not pursuing that business, but were acting outside of it, and in an entirely different capacity, a delivery to Campbell would have invested him with title to the cotton. But there was no evidence of such a state of facts; on the contrary, all the

542 . SUPREME COURT [Dec. Term

evidence was of a sale in the regular pursuit of their business as commission merchants. The first charge given, if it asserts a correct legal proposition, is erroneous, in instructing the jury on a state of facts of which there was no evidence. The charge given at the instance of appellee seems to us also erroneous, if it intended to assert that because claimants had the right to retain the proceeds of the sale of cotton, to meet advances made by them to Fariss & McCurdy, then the plaintiffs were entitled to recover. It often happens that commission merchants advance more than the value of cotton or other goods, which are consigned to, or deposited with them for sale, and have a right to retain the proceeds of sale to cover such advances. This works no change in the title of the goods, nor does it change their relation to their customer. Nor would the title to the goods or the relation to the customer be changed, if there was an express agreement between the merchant and customer, that the proceeds of sale should be retained and applied to the payment of advances. This charge was erroneous, and its direct, inevitable tendency and effect was to mislead the jury.

The charges requested by appellants asserted correct legal propositions, and should have been given. It was certainly the law, as asserted by the counsel for the appellee, and is yet generally, that the lien of a factor or commission merchant continued only so long as he has possession, and if he parts with possession after the lien attaches, the lien is lost. The rule has no application to a sale of cotton made by a commission merchant, to a broker or buyer, since the statute. The operation of the statute is to preserve the lien, as it preserves the title, certainly so far as the broker or buyer and the factor or merchant are concerned, whatever might be the effect, if the principal regained possession, without the possession of the factor intervening.

It is said, however, that if the claimants had no other right or interest in the cotton than as commission merchants, holding it for sale, with a lien for advances, the title residing in Fariss & McCurdy, their principals, the claim should have been made by the latter, and the claimants cannot interpose such title to defeat the levy of the attachment. We have already said the claimant must recover on the strength of his own title, and that to defeat the levy he cannot set up the outstanding title of a stranger. But a title which would authorize the claimant to support the corresponding common law remedies of trespass, trover or detinue, will support a claim under the statute. Any bailee could support either of

VOL. LIII.

[Tabor *v.* Lorance.]

the common law remedies, against a mere wrong-doer disturbing his possession. The possession was sufficient and conclusive evidence of title, against all the world except the true owner, or one connecting himself with his title. It seems never to have been doubted that a factor or broker, having the actual possession of property belonging to his principal, could maintain trespass or trover for any tort committed by a third party, whereby such possession is affected. Russell on Factors, 160. We think the claim was well interposed by appellants, and can be maintained against one not in a condition to set up the title of the principal.

The judgment must be reversed, and the cause remanded.