REAVIS v. GARNER, et als.

1. The rights of property of a bankrupt, to which the assignee succeeds, are those rights, to which the bankrupt had either a legal, or equitable title, which could be enforced in a court of justice; the right, therefore, which a bankrupt would have, under a fraudulent assignment of all his property, would not pass to his assignee.

2. *Quere*, who is entitled to money in the hands of a trustee of a deed of trust, fraudulent in law, and therefore void as against creditors? Does it belong to the creditors generally who assert a title to it, or only to those who refuse to come in under the commission?

Error to the Court of Chancery for Sumter.

THE bill was filed by the defendants in error, and alledges, that W. & J. Farmer executed a voluntary deed of assignment to the plaintiff in error as trustee, by which deed they conveyed to him all their goods and chattels, and property of every kind, real and personal, in trust for the benefit of their creditors, which the trustee was to convert into money, and discharge certain debts in the order named in the deed, these creditors being divided into eight classes. The residue, the trustee is directed to distribute rateably among the other creditors not provided for, who shall within ninety days accept the provision made for them, and release the grantors from all further liability; and if none of the creditors execute the release, then, after the payment of the debts specifically provided for, the trustee to refund the residue to the grantors.

The bill further charges, that the creditors specifically provided for, have been paid, that none of the other creditors execute the release required of them by the deed, and that there is now in the hands of the trustee the sum of $3,000.

That the Farmers became voluntary bankrupts, and were so declared the 26th May, 1842. That in the schedule filed by them, of their effects, they set forth their interest in the deed of assignment, made by them to the defendant as trustee. That this interest, was pursuant to an order of the court

sold by the assignee in bankruptcy, and purchased by complainants, who were thereby substituted to all the rights which were vested in the assignee, &c. That the creditors not specially provided for in the deed, are numerous, and unknown to complainants. It is also charged in the bill, that the deed was made with the intent to hinder and delay creditors.

The answer of the trustee, who is the only defendant, admits the making of the deed, and the acceptance of the trust by him, and that he has paid off all the debts specifically provided for, except two of $1,600 each, which, believing the makers not liable therefor, he has not paid, and admits that he has in his hands $3,000 of the trust estate. Admits that none of the creditors of the eighth class have released, except two, the validity of which he leaves with the court. Admits the bankruptcy of the Farmers, and the purchase by complainants of their interest in the deed of assignment, but whether the sale was made in virtue of an order of court, or whether the complainants, by their purchase, were substituted to all the right, and title, to the interest sold defendant, does not know, and is unable to answer. He also demurs to the bill for want of equity.

The parties went to a hearing upon bill and answer, and the chancellor considered that the resulting trust to the debtor, rendered the deed fraudulent and void; that although so far as the trustee had paid the creditors under the power conferred on him by the deed, it should not be disturbed, yet that by the purchase the complainants were vested with the right, to all the surplus remaining in the hands of the trustee. From this decree the defendant prosecutes this writ, and assigns for error—

1. The chancellor erred in declaring the deed of assignment fraudulent in law.

2. In declaring that the complainants, by their purchase, acquired the right to set aside the deed.

3. In making a decree, it not appearing that the sale was made by order of the court sitting in bankruptcy.

4. In rendering a decree without the proper parties being made.

Reavis v. Garner, et als.

REAVIS & BALDWIN, for plaintiff in error.

1. The deed of trust is not fraudulent on its face—the stipulation for the release does not hurt it, though made as a condition to the *cestui que trust's* getting any thing : the provision that, if they do not release, the property shall go to the grantors, only provides what the law, without the words, declares. [Malone & Lyon v. Hamilton, Minor's Rep. 286 ; 1 Ala. R. 249 ; Ashurst v. Martin, 9 Porter, 566 ; 5 Pick. 29.] Here the deed keeps nothing from creditors, and secures nothing to the grantors. [1 Grattan, 280.]

2. The complainants acquired no right to set aside the deed by their purchase, even if the deed was fraudulent. They only bought " the interest of the Farmers in the deed;" which certainly was not money to which the assignee in bankruptcy was entitled, because the deed was fraudulent. They only bought the reversionary or resulting interest, or equity of redemption. What they took by the purchase, was under the deed, not against the deed.

3. The bankrupt law does not (it is submitted) authorize a sale of the bankrupt's choses. However general the terms of the act, they must be taken in subordination to the purposes and character of the assignee's office and duties. [See bankrupt act, $ 9.]

4. The proper parties were not before the court. [Story's Eq. Pl. § 72, 81, 86.] Objection can be taken at hearing. [1 Barbour's Pr. 320, 321.]

R. H. SMITH, contra.

1. The deed is fraudulent on its face. [Ashurst v. Martin, 9 Port. 566 ; Gazzam v. Poyntz, 4 Ala. 374.]

2. By the bankrupt act, the assignee is a trustee of the creditors, and takes as a purchaser for a valuable consideration, and a sale by him passes all his rights to his vendee. [Bankrupt law, § 3 ; 6 Ala. 343; Ex parte Christy, 3 How. U. S. Rep. 293, 315 ; Butler and wife v. Merchants' Ins. Co. Mobile, 8 Ala. 150 ; Carter v. Castleberry, 5 Ala. 277.]

3. It was unnecessary to prove any order of sale. [See bankrupt act.]

4. It was unnecessary to make any other defendant than

the trustee. [Story's Eq. Pl. 145, § 149; Ib. 192, last cl. § 216; Ib. 140, § 143.]

ORMOND, J.—The first question made in the argument, whether this deed is fraudulent in legal estimation, without proof of actual fraud, in consequence of the resulting trust secured to the grantors, in the event the creditors of the eighth class did not execute within ninety days a release to the Farmers, and accept the provision made for them in the deed, has been considered by this court at the present term, in the case of Grimshaw and Brown v. Walker, where it was held that precisely such a provision as this, did render a deed of trust fraudulent, and void. Referring, therefore, to that case, for an exposition of the principles which led us to that conclusion, we proceed to the consideration of the remaining question, which is one of novelty, and not free from difficulty. What did the defendants in error acquire, by their purchase from the assignee in bankruptcy, of the interest of the bankrupts, in this assignment?

The solution of this question, must depend upon the proper construction of the bankrupt law of the United States; and of the rights which the assignee acquired under it. The third section of the act declares, "that all the property, and rights of property, of every name and nature, whether real, personal, or mixed, of every bankrupt, except as is hereinafter provided, who shall by a decree of the proper court be declared to be a bankrupt within this act, shall by mere operation of law, *ipso facto*, from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment, or other conveyance whatsoever, and the same shall be vested by force of the same decree, in such assignee, as shall from time to time be appointed by the court for this purpose; and the assignees so appointed, shall be vested with all the rights, titles, powers, and authorities, to sell, manage, and dispose of the same, and to sue for and defend the same, subject to the orders and directions of such court, as fully, to all intents and purposes, as the same were vested in, or might be exercised by the bankrupt before, or at the time of his bankruptcy, declared as aforesaid."

The evident design of this clause of the law, was to invest

the assignee with all the rights of the bankrupt. The bankruptcy is a civil death, and the assignee succeeds to all his property, and rights of property, and has the same right in it, and the same power over it, that the bankrupt had when the decree in bankruptcy was rendered. It is therefore only necessary to inquire, whether the bankrupt had such an interest in the surplus, under this deed, as he could have transferred and vested in another. If he could not make such a sale, and transfer, it is clear the assignee in bankruptcy could not, as he has the same, and no other, or greater rights under the deed, than the bankrupt.

If this deed had been valid, the grantor would have had a clear right to any surplus which might have remained, after the discharge of the trust; but the deed being fraudulent and void, we are unable to comprehend how he could derive a title to it through the deed. It may be conceded, that as against the trustee, he could have recovered this surplus, no creditor asserting a right to it. But this is not such a right of property as the assignee succeeded to. The rights of property, in the mind of the framers of the bankrupt law, were those to which the bankrupt had either a legal, or an equitable title, which could be enforced in a court of justice; not mere possibilities, which were valuable or worthless, according as creditors enforced, or abstained from enforcing their rights to it. Again, how could such a claim be described in the schedule, which the bankrupt was required to give of his effects. It is described, as appears from the bill, as " their interest in an assignment to Turner Reavis." We have seen that they can assert no interest under this conveyance, as such. The bankrupt law required the assets to be distinctly pointed out, doubtless for the purpose of enabling the assignee to convert them into money, and the necessity for this is more apparent, from the mode generally adopted by the courts of the United States, of directing a sale of the bankrupt's *choses in action.* It is surely contrary to the policy of that law, that under this obscure designation, of an unknown interest, a right should be acquired which cannot be derived from, or enforced under the assignment, but which depends upon the contingency, of no creditor of the bankrupt assert-

84

ing a right to it. It is contrary to the policy of that law, be-cause in legal estimation such a right is valueless, and in fact every one knows that such bare possibilities have a mere no-minal value, and the sale of them adds nothing material to the fund to be distributed. Whilst, therefore, the sale of such interests would not benefit the bankrupt, or the creditors coming in under the commission, all other creditors would be injured, by being deprived of the right of subject-ing it to the payment of their debts.

But if this were not the correct interpretation of the bank-rupt law, what did the complainants purchase of the assignee? —certainly nothing but the supposed resulting trust under the deed; and under this purchase they cannot assert a title to that which they did not buy.

The assignee, it is urged, is a trustee for the creditors. He is for such as come in under the commission, and prove their debts. As to all other creditors, and it appears from the re-cord in this case there are such, his interest is adverse. No act of his, therefore, can conclude them, from obtaining pay-ment of their debts, from property, which by the fraudulent conduct of the debtor, previous to his bankruptcy, had been separated from his estate. If it were conceded that the as-signee could do that, which the bankrupt himself could not do, invalidate the deed, and recover the property from the trustee, he could not, for the reasons already given, convey this right to another.

The question may be asked, what is to become of this money in the hands of the trustee, as the bankrupt's right is gone by the bankruptcy, even if no creditor asserts a right to it. Does it belong to the creditors generally who assert a ti-tle to it, or only to those who refused to come in under the commission? We merely put these queries: as they have not been argued, it would be improper to answer them at this time.

We have been compelled to decide this case on principle, and without reference to adjudged cases. If any exist, they have not been brought to our notice, nor have we been able to find any. Our conclusion is, that the decree of the chan-cellor must be reversed, and the bill be dismissed.