## POWELL *vs.* KNOX.

1. A judgment, rendered against a bankrupt before petition filed, is not a lien on real estate, held by him under an equitable title merely.

2. On the death of a trustee, the title deed of the trust estate devolves on his personal representative, and a notice to produce it, given to one of the *cestui que trusts*, is not of itself sufficient to authorise the admission of secondary evidence.

3. A certified copy of the record of a deed, from the court of another State, is not admissible as secondary evidence, unless it be first shown that the deed was registered by authority of law.

4. The possession of property by a bankrupt six years after he filed his petition, creates no presumption of fraud in the procurement of his discharge, and evidence of such possession, unaccompanied with other proof, is properly excluded from the jury.

5. The mere fact that a bankrupt, at some time prior to the filing of his petition, was owner of certain property, which is not returned in his schedule, raises no such presumption of fraud as will cast upon him the burden of explanation.

6. Where, upon the trial of an issue of fraud *vel non* in obtaining a discharge in bankruptcy, it is shown that five years before the filing of his petition the bankrupt was the owner of a certain slave, which was not rendered in his schedule, and that four years after his discharge the same slave was in his possession, the law raises the presumption that he was the owner of the slave during the *interim*, and devolves upon him the necessity of showing by competent proof that such was not the fact.

Powell v. Knox.

Error to the County Court of Lowndes. Tried before the Hon. Edward H. Cook.

THIS was a proceeding on supersedeas, sued out by the defendant against the plaintiff in error, to arrest and quash an execution, on the ground that the defendant was a certificated bankrupt, having obtained his discharge in 1842. By a bill of exceptions, found in the record, it appears that the judgment on which the execution issued was rendered before the petition in bankruptcy was filed, and that the defendant, returned in his *schedule* "the one-seventh interest" in three eigthty acre lots or parcels of land in Wilcox county, which William Bonner had, some time before, conveyed by deed to one Spann, now deceased, in trust for the children of Sarah Knox, of whom defendant was one. The plaintiff insisted that his judgment was a lien on this land, but the court held otherwise. It further appears, that the plaintiff filed specifications of fraud, &c., and thereupon an issue was formed and tried by a jury. The plaintiff, having proven notice to the defendant to produce the original, offered to read in evidence a certified copy of the record of a deed, executed in 1826, in South Carolina, and there registered, by which Charles Spann, the grantor, conveyed to John F. Spann and another, both of whom were proven to be dead, certain personal property in trust for the separate use of Sarah Knox, *deceased*, the mother of defendant, during her natural life, with remainder to her children. To the introduction of this copy the defendant objected, and the court sustained his objection. The plaintiff also offered to prove that the defendant, at the time of the trial, (which was in 1848,) had in his possession a number of slaves, to the admissibility of which the defendant objected, and the court excluded the proof. The plaintiff read in evidence a deed, bearing date in 1819, by which Charles Spann conveyed to the said Sarah Knox during the term of her natural life, and to her children after her death, a certain parcel of land in the State of South Carolina, proved that the said Sarah Knox died before the defendant applied for the benefit of the bankrupt act, and shewed by the defendant's schedule, that he had not made a surreneer of this land. He also proved, that in 1835-6 and '37, the defendant was in possession of, and exercised control,

as owner, over a certain slave by the name of William, and that the same slave was in his possession in 1846, and so continued until the death of the slave. William was not returned in defendant's schedule.

The plaintiff requested the court to charge the jury:

1st. That if they beleived from the evidence that the deed from Charles Spann conveyed to the defendant any title to or interest in the land in South Carolina, and that he failed to render in such interest in the schedule of his effects, then it was incumbent on him to show how he parted with that interest:

2d. That if they believed that the slave William was in the possession of the defendant in 1835-6 and '37, and was then his property, and that afterwards, in 1846, the said slave was in his possession and was then his property,—the presumption of law was, that he had continued to be his property during the whole interval between 1837 and 1846, and it was incumbent on the defendant to show why he had not rendered him in, in his schedule of effects.

The court refused to give either of these charges, and the plaintiff excepted, and he now assigns as error the several rulings of the court, as well as its refusal to give the above charges.

GILCHRIST & Cox, for plaintiff.

BOLLING & STONE, for defendant:

1. A decree in bankruptcy operates at once as a discharge of all the debts of the bankrupt, whether reduced to judgment or not. Sec. 4 Bankrupt Law of 1841; McDougald v. Read & Talbot, 5 Ala. Rep. 810.

2. If the plaintiff in error relies upon a lien created by his judgment on the real estate of the bankrupt, the onus is on him to show that the bankrupt had an interest in the real estate upon which the judgment might operate as a lien; otherwise the presumption of law would be that the bankrupt was discharged from the judgment.

3. The evidence, as set out in the bill of exceptions, shows that the defendant had only an equitable title to the real estate, which cannot form the basis of a judgment lien, nor be sold under execution at law. Land v. Hopkins, 7 Ala. 115.

4. The court below did not err in rejecting the copy of the

deed marked as Exhibit A. The preliminary testimony was not sufficient to authorise proof of its contents. Bethea v. Mc-Call, pro. ami, 3 Ala. Rep. 449. Defendant in error was not a party to the deed, and could not be presumed to have it in his possession. Mordecai v. Beale, 8 Port. 529; Jones v. Scott, 2 Ala. Rep. 58; Beall v. Dearing, 7 ib. 124.

5. The execution of the deed should have been proved. 7 Ala. Rep. 124.

6. There is no law in this State, nor in South Carolina, requiring such deed to be received, and there the transcript cannot be read in evidence. Ib.

7. A copy of the deed was inadmissible as evidence, without proving that by the laws of South Carolina such deed was required to be recorded. Lee v. Matthews, 10 Ala. Rep. 682.

CHILTON, J.—It is very clear that the certificate of discharge in bankruptcy, when fairly obtained, operates a complete discharge to the bankrupt of all his debts which were proveable under the act, reserving however to the judgment or execution creditor such *liens* as had attached before the decree in bankruptcy was rendered. McDougald v. Reid & Talbot, 5 Ala. Rep. 810; Doremus, Suydams & Co. v. Walker, 8 ib. 194, 202. The lien, it is said in the case last cited, is preserved according to the rights of the creditor at the time the bankruptcy is established. In the case before us, the debtor had but an equitable title in the land, and it is well settled that such title cannot be sold under execution at law, but the statute in express terms declares that it shall be made liable by suit in chancery, and not otherwise. See Clay's Dig. 350, § 31—216, § 76. In Willis v. Elmore, 13 Ala. Rep. 360, it was held that a purchaser of land, who had made full payment, holding only a bond for title, had no such interest as could be sold under execution at law, and that one who purchased at the sheriff's sale acquired no title by the deed from that officer.

It seems necessarily to follow that as the interest is not subject at law to the judgment, no legal lien is created by the judgment upon it; for the lien results from the right which the judgment creditor has to have the land extended under the writ of *elegit*, and as the statute divests him of the right, the lien which is incidental to it must fail also.

The fact that the land was inserted in the schedule does not aid the plaintiff in error. It was the duty of the bankrupt to insert it, and if his title was equitable merely, the title which he possessed, as well as the personal property owned by him, immediately upon the decree in bankruptcy, became vested in his assignee; for the assignee succeeds to all the rights of the bankrupt, whether they be legal or equitable. Reavis v. Garner et al., 12 Ala. Rep. 661. It follows, therefore, that the court did not err in granting the motion to quash the execution, upon the ground of the supposed lien upon the real estate.

Neither was there any error in rejecting the copy of the deed from Charles Spann, sen. to John R. and Charles Spann, in trust for the wife of John Knox, remainder to her children, of whom the bankrupt was one. In legal contemplation, upon the death of a trustee, the title-deed evidencing his trust devolves upon his personal representative, along with the trust. It was recently held by this court, that upon the death of a trustee pending a suit instituted by him as such, the suit must be revived in the name of the executor of the trustee. See Mauldin, Montague & Co. v. Armistead, ex'r., 14 Ala. Rep. 702. As then the defendant in error was not the custodian of the deed, and it is not shown that he ever had it in his possession, a notice to his counsel was not sufficient without further efforts to account for the original to let in secondary evidence. It may further be observed, that had the plaintiff in error laid a sufficient predicate for parol proof of the contents of the deed, it is a clear proposition of law that a certified copy of the deed from what purports to be a copy upon the records of court in South Carolina, is not sufficient to authorise it to be read in evidence, in the absence of all proof that such instruments are authorised by the laws of the State of South Carolina to be recorded. Until then, the act of Congress prescribing the mode for certifying records from one State to another does not apply—*non constant*, there may be no warrant in that State for admitting it to record.

The questions raised upon the legal effect of the proof of possession of the slave William, as presented in the charge which was asked and refused, and in the charge given, as also with regard to the exclusion of the proof of possession by the defendant in error of the several slaves men-

tioned in the copy of the deed which we have noticed above as excluded from the jury, may be considered together and briefly disposed of.

In Hargrove v. Cloud, 8 Ala. Rep. 173, which is afterwards renewed in Petty v. J. B. & D. Walker, 379-383, it was said, the possession of property by a bankrupt, at the time of his discharge, or immediately after, which by industry he might reasonably have acquired, will not warrant the presumption that he did not make a full surrender of his estate. But when the amount of it is so great as to make it improbable that it was earned by him since the filing of his petition, it devolves on him to show how he became the proprietor of such property, whether by inheritance, bequest or purchase, and the *onus* of relieving himself from the imputation of fraud, in such case, is cast upon him who is best acquainted with the origin and nature of his title. It is said in the subsequent case above alluded to, that it was inferable from the record in Hargrove v. Cloud, that the bankrupt was in the possession of slaves *after filing* his petition, and the charge was, that possession *immediately* after the decree was a circumstance to create the presumption of fraud, unless explained by other evidence; and thus understood, this court expressed its satisfaction with the previous decision, but said, "it was a misapprehension to apply what was there said to cases where the possession was not immediate after the decree, or rather after the application; for neither the jury nor court can be supposed to know the means within the power of an individual to acquire by his industry or business the ownership of property. The rule is there laid down, that to cast on the bankrupt the *onus* of explaining how he acquired the property, and to raise a presumption of fraud, the possession must be refered to the time of the application, or to a time so recently thereafter, that no business or industry could reasonably have created a fund adequate to the acquisition of the property. In all other cases, it is said, it rests with the plaintiff to create the presumption of fraud, by showing that the business or industry of the defendant could not reasonably have furnished him the property which he held as owner.

Applying the principle settled by the previous decisions of this court to this case, we think it very clear that the County

Court did not err in excluding the evidence of the possession by the defendant in error of certain slaves, *at the time of trial,* which was more than six years from the time he filed his petition in bankruptcy. The evidence excluded in the case of Petty v. Walker, *supra,* was that a witness had heard the bankrupt say frequently, during the years 1844-5 and '46, that he was interested as part owner in several steamboats: *Held,* that the exclusion of the proof was not erroneous.

It is said that fraud is never to be presumed where all the facts and circumstances in proof may consist with purity of intention. Steele v. Kinkle & Lehr, 8 Ala. Rep. 352. The first charge asked of the court below conflicts with this principle; for it assumes that if the bankrupt had land before his bankruptcy, (the proof not showing how long before the filing of his application he was the owner,) it devolves on him to show that he was not the owner *at the time* of his application, if he failed to render it in his schedule. The second charge asserts that if the bankrupt, who filed his petition in February 1842, was in possession of a negro man in the years 1835-6 and '37, and was then the owner, and afterwards, in the year 1846, the same boy was in his possession and his property, and was not rendered in his schedule of effects, and no evidence was offered by Knox to show a change of possession, it was *prima facie* evidence that it was all the time the property of Knox, and cast upon him the duty of showing why he was omitted in his schedule of effects. The presumption of law is, that things are properly and legally in their existing state, and hence one in possession of property is presumed to be the rightful owner. 2 Phil. Ev. (C. & H. Notes,) n. 298, p. 925, § 6. So also, the law presumes that a fact continuous in its character, when once shown to exist, still continues to exist, until a 'change is shown to have taken place. The law presumes the continuance of a legal or actual possession—Ib.; Bayard's Lessee v. Colefax, 4 Was. Cir. Ct. Rep. 38; that a partnership continues; that a corporation continues to exist— 4 Wend. 423; ib. 672; 9 ib. 351; or that an entry and an ouster by a landlord upon his tenant continues, till a restoration be shown. Applying these principles to the case at bar, we are of the opinion that although the possession or ownership several years anterior to the application for the discharge

in bankruptcy of property, whether real or personal, is not suf-ficient to create the presumption of ownership *at the time* of the application, requiring the party to explain how he had dis-posed of said property, yet when the previous possession and ownership is coupled with the subsequent possession, and no proof is introduced to explain the condition of the property in the meantime, the law does raise the presumption that the party who has the property in possession as owner at these two periods owned it in the *interim.* Unconnected with the possession subsequent to the application, the previous possess-ion in 1834-5 and '36 was perhaps too remote to furnish a rea-sonable presumption of ownership at the time of rendering his schedule by the bankrupt, so as to cast upon the defendant the duty of showing how he had disposed of it. It would often be most difficult, and sometimes utterly impracticable, for a party to show and account for all the property he was pos-sessed of years previously, and to impose upon the bankrupt this duty would be most onerous. But where he is shown to have been possessed of property and controlling it as owner, a few years before his application, and has the same property under his control after his discharge, there being no circum-stances shown from which it may be inferred that he disposed of the property before his application and re-acquired it after that period, we think the legal presumption is adverse to the bankrupt, and that it is not only reasonable, but a duty he owes to himself, *to* explain the condition of the property at the time of his application. Unexplained, the *prima facie* pre-sumption is that he had possession, and was the owner con-tinuously from his first ownership to the time he is last seen in possession of the slave.

The charge of the court is opposed to this view, and the judgment is consequently reversed, and the cause remanded.