160 So. 534

## WARRICK v. LIDDON et al.
### 4 Div. 792.

Supreme Court of Alabama.

Feb. 28, 1935.

Rehearing Denied April 4, 1935.

254

Farmer, Merrill & Farmer, of Dothan, for appellees other than Liddon.

O. S. Lewis, of Dothan, for appellant.

**FOSTER, Justice.**

This is a suit in equity to enjoin the negotiation of negotiable warehouse receipts for cotton, and to subject the cotton to the payment of a judgment in favor of complainant against the owner of the cotton. The cotton is claimed by Dean & Moore, who made a contract of purchase prior to the issuance of the injunction.

The material inquiry is whether such contract fixed a date on which to value the equity

of redemption in the cotton so as to be exempt, and beyond the reach of complainant to satisfy his judgment, and whether the amount of the purchase price so agreed on was conclusive on complainant on the exemption contest. On that inquiry there is little or no material conflict in the evidence.

Complainant's judgment was rendered February 23, 1933, and a certificate recorded in the probate office on the same day, but with no waiver of exemptions. The cotton was then in the warehouse for which negotiable receipts had been issued. Those receipts had been pledged and delivered to the bank for borrowed money, and were held by it on the date of the rendition of complainant's judgment and the recordation of the certificate. The owner retained an equity of redemption in the cotton, subject to the lien of the bank and of the warehousemen for their charges.

■ The rendition of the judgment and recordation of the certificate created a lien only on such property of the defendant as was subject to levy and sale under execution—section 7875, Code—and, of course, not exempt by law. When goods are stored in a warehouse for which a negotiable receipt is issued, they cannot, while in possession of the warehouseman, be levied upon under an execution, unless the receipt be first surrendered to the warehouseman, or its negotiation enjoined. Section 10531, Code. See Gen. Acts 1931, p. 580, § 39. But if the equity of redemption in the cotton was a property right subject to levy and sale, complainant acquired a lien on it. Section 7875, Code. The equity of redemption in personal property is ordinarily subject to levy and sale under execution by section 7806, subd. 3. Moody v. U. S. F. & G. Co., 223 Ala. 507, 137 So. 308.

■■ But that section must be interpreted in the light of section 10531, Code. The latter creates a limitation upon the former. It is not sufficient to say that section 10531 is only for the benefit of the warehouseman or the holder of the receipt, and that the levy on an equity of redemption does not disturb the physical possession of the property, and is expressly made subject to the rights of the receipt holder, because, although the levy is upon such intangible interest, it is the right and duty of the sheriff for his protection and that of the purchaser at his sale to seize the property when he makes the levy (McConeghy v. McCaw, 31 Ala. 447), as when a partner's interest is levied on when the execution runs only against him (Andrews v. Keith, 34 Ala. 722), so that no lien was created on account of complainant's judgment

until the negotiation of the warehouse receipts was enjoined in this suit.

■ The facts thus stated and legal status are not controverted by complainant. But Dean & Moore, appellees here, contend that prior to the issuance of the injunction at the suit of complainant they purchased the property, and acquired such title to it as that it ceased to be owned by the defendant in execution, and his right to claim it or the value of his interest as exempt should be determined as of that day.

On that question, the evidence, without dispute, shows that an agent of Dean & Moore had previously inspected samples of the cotton, satisfied himself as to its condition, classed it all as middling, and after doing so made an agreement with the owner, whereby he offered to pay 7 cents per pound for the round lot, subject to be reweighed before paid for. This offer was accepted. There were no conditions included. No rejections permitted for any cause, so far as the contract stipulated, nor implied by law. Thereupon the purchaser was told of the claim of the bank, and that it held the receipts as collateral. The purchaser thereupon went to the bank, saw the cashier, told him of the trade, and he agreed to handle a draft in payment for the cotton. The judgment debtor, Liddon, also called the cashier over the telephone, and told him about making the sale, that the purchaser would give him a draft and for the bank to take out the amount of his debt and credit his deposit account with the balance. The purchaser called at the bank, and told the cashier that he wanted a list of the numbers and marks of the cotton as shown by the receipts, and asked if he would accept draft for the price. One witness testified that the cashier said the purchaser did not need to have the receipts themselves. There was no deferred payment agreed on; no credit extended. The list of the marks and numbers of the cotton was taken to the two warehouses, and it was all ordered lined out for reweighing. This was done at once, and the next morning reweighing began. The four bales in one warehouse were reweighed, and they were preparing to reweigh the one hundred bales in the other, when the injunction in this suit was served. All the cotton had been put in line, was marked, and identified. The receipts had not been put into the purchaser's hands by the bank which held them as collateral. No payment had been made and could not be under the contract until the cotton was all reweighed. The warehousemen were not due to deliver the cotton with-

out the receipt or upon the order of a court with jurisdiction. The receipts had not been thus delivered nor order for the cotton made by a court.

The legal question is, 'Where was the ownership of the cotton? We agree with the trial court that it had passed to Dean & Moore, and that the cotton itself was not subject to complainant's judgment, irrespective of any claim of exemption. The principles of law leading to that opinion need statement and analysis.

■■ The question is in respect to the passing of the property right held by Liddon, such as he had, and not that which the bank had by its collateral agreement. Liddon's equity of redemption was not evidenced by the warehouse receipts. The transfer or negotiation of such receipts was not necessary for Liddon to assign his equity of redemption. Moreover, such negotiable receipts are transferable so as to pass the title by delivery without negotiation by indorsement. When so negotiated, the holder is protected as the holder of other negotiable paper. But when transferred by delivery, the title to the goods passes, but without the protection of the law merchant. Cleveland Storage Co. v. Guardian Trust Co., 222 Ala. 210, 131 So. 634; Goodwyn v. Union Springs Guano Co., 228 Ala. 173, 153 So. 246.

But that principle is not here controlling, since the rights of the bank, the holder of the receipts as collateral, are not now questioned. But the question is dependent upon the ownership of the equity of redemption. The transaction occurred in 1933, subsequent to the effect of the Uniform Sales Act, approved July 22, 1931, p. 570. We should not, therefore, overlook it in considering the rights of the parties. It contains the following provisions:

"Sec. 18. (Property in Specific Goods Passes when Parties so Intend.) (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

"Sec. 19. (Rules for Ascertaining Intention.) Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer. Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done."

The rule had been theretofore thus expressed: "But, under the evidence before the court, delivery was not essential to the passage of the title from the seller to the buyer. Where the goods sold are in the possession of the seller, and are definitely ascertained and agreed upon—nothing remaining to be done to determine their price, quantity, or identity—the sale is complete, and the title passes by force of the contract itself, in the absence of anything to show a contrary intention. Magee v. Billingsley, 3 Ala. 679, 693; Screws v. Roach, 22 Ala. 675, 676; Hudson v. Weir, 29 Ala. 294; Darden v. Lovelace, 52 Ala. 289; Lehman & Co. v. Warren et al., 53 Ala. 535, 540; Mobile Savings Bank v. Fry, 69 Ala. 348; Pilgreen v. State, 71 Ala. 368; Foley v. Felrath, 98 Ala. 176, 180, 13 So. 485, 39 Am. St. Rep. 39; Cook & Laurie Contracting Co. v. Bell, 177 Ala. 618, 628, 59 So. 273." Iron City Grain Co. v. Arnold, 215 Ala. 543, 112 So. 123, 124. It is likewise so stated in 55 Corpus Juris 535.

■■ Under such circumstances, payment of the price or delivery of the property is not a condition to passing the general property right to the buyer, even though delivery and payment are to be concurrent. This is the general rule elsewhere. 55 Corpus Juris 565. This is said not to conflict with another that when the contract is for cash on delivery, and the parties are distant from each other, a delivery to a carrier C. O. D. reserves a special property in the seller, but the general ownership passes to the buyer, who has the risk of loss. Pilgreen v. State, 71 Ala. 368; Brandon Printing Co. v. Bostick, 126 Ala. 247, 28 So. 705. Though it is not always so expressed. Shines v. Steiner, 76 Ala. 458; Harmon v. Goetter, 87 Ala. 325, 6 So. 93; Drake v. Scott, 136 Ala. 261, 33 So. 873, 96 Am. St. Rep. 25. And a different intention is shown when the goods are shipped to order of shipper, notify the buyer. Jones v. Brewer, 79 Ala. 545.

■ The ownership may and does pass to the purchaser under the circumstances stated in the authorities cited, though there has been

no delivery and no payment of the purchase price. The property is thereafter at the risk of the purchaser, though the seller may retain possession to secure payment of the purchase price. So long as he retains the possession, he has what is called a lien to secure him, though the general property right has passed out of him. 55 Corpus Juris 896; American Bottle Co. v. Finney, 203 Ala. 92, 82 So. 106; Uniform Sales Act, Gen. Acts 1931, p. 584, §§ 53, 54.

While, the contrary not appearing in the agreement, a sale contemplates that the purchaser will pay for the property when he receives possession, Gen. Acts 1931, p. 581, § 42; Miller v. Direct Lbr. Co., 207 Ala. 338, 92 So. 473; Long v. Addix, 184 Ala. 236, 63 So. 982, there is also an implication that the property and ownership pass without payment and delivery when the conditions which we have pointed out are shown to exist, Pilgreen v. State, supra.

[██] The undisputed evidence shows that the cotton was definitely ascertained and agreed on, that nothing remained to be done to determine the price, quantity, or identity. The price was 7 cents per pound, the quantity was one hundred and four bales, the identity fixed by the numbers on the receipts, and as to the cotton itself a list of it was given to the purchaser, and the warehousemen had separated and lined it all up. The act of reweighing is not such as is contemplated by the authorities as one fixing the price and quantity, unless it is to be weighed and measured from a larger bulk. Mobile Savings Bank v. Fry, 69 Ala. 348. No discretion or option remained with either party as in Allen v. Maury, 66 Ala. 10. Or, as expressed in the Uniform Sales Act, there was an unconditional contract to sell specific goods in a deliverable state. When so, "the property in the goods passes to the buyer when the contract is made," Gen. Acts 1931, p. 575, § 19, even though it is contemplated that payment will be made on delivery.

[██] If we are correct in our opinion thus far, it follows that the rights of the complainant in respect to Liddon's interest in the price or value of the cotton is controlled by the contract of sale on April 19, 1933. The trial court found this to be $682.21 as of the date of the decree, and that if settlement had been made on April 19th, pursuant to the contract, it would have been $849.16. The difference is the accrual of interest on the bank claim pending this suit. The amount of Liddon's interest in the purchase price was properly found to be exempt from the payment of complainant's judgment on the claim of exemption and the contest of such claim filed by complainant and determined by the court in its final decree. As we understand appellant's contention, the value of Liddon's interest should be determined by the market value of cotton either when the claim of exemption was filed on June 3, 1933, or when the claim of exemption was amended July 6, 1933, and that on the first-named date it was worth about 8.20 cents per pound, and on the latter date 10 cents.

But that argument disregards the effect of the binding agreement of April 19th. Liddon's interest was then fixed on a basis of 7 cents per pound. The subsequent rise in the value of the cotton was for the benefit of his purchasers Dean & Moore. The risk of loss or gain became theirs from that date. The trial court so correctly held, as we view the situation.

[██] We do not think there is any question of whether they were bona fide purchasers. Complainant had no lien when they purchased.

[██] Appellant's argument would, of course, be effective if Liddon had not sold the property to Dean & Moore before this suit was filed, and their lien attached. It is immaterial to Liddon's right of exemption that the claim was not filed until after the suit was begun.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.