73 So.2d 756

**MARTIN TRUCK LINE, Inc.**

v.

**ALABAMA TANK LINES, Inc., et al.**

6 Div. 531.

Supreme Court of Alabama.

June 24, 1954.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellant-cross appellee.

Maurice F. Bishop, Birmingham, for Alabama Tank Lines.

164

Jack Crenshaw, Montgomery, for Smith Transfer Co.

Wm. Inge Hill, Montgomery, for Chambers Truck Lines.

LAWSON, Justice.

This suit was filed in the Circuit Court of Jefferson County, In Equity, by Alabama Tank Lines, Inc., a corporation, Smith Transfer Co., Inc., a corporation, and W. M. Chambers, an individual, doing business as W. M. Chambers Truck Line, against Direct Transport Company of Alabama, Inc., a corporation, Martin Truck Line, Inc., a corporation, and against Calvin Houghland and J. B. Page, Jr.

The complainants at the time this proceeding was instituted were each engaged in the intrastate transportation of petrole-um products in bulk, that is they transported petroleum products in special equipment, such as tank trucks and tank tractors. For the purpose of this case, it may be said that each of the complainants was authorized by the Alabama Public Service Commission, hereafter referred to as the Commission, to engage in such transportation.

The respondent Direct Transport Company, of Alabama, Inc., hereafter referred to as Direct, is an Alabama corporation. It does not hold either a certificate or permit issued by the Commission authorizing it to transport commodities for hire in intrastate commerce, although it owns equipment of the kind used in the transportation of petroleum products in bulk.

The individual respondents Houghland and Page, residents of Nashville, Tennessee, own all of the stock of Direct except one share.

On July 13, 1950, the Commission authorized the transfer of its Certificate of Public Convenience and Necessity No. 824 to the respondent, Martin Truck Line, Inc., a corporation, sometimes referred to hereafter simply as Martin. All of Martin's stock was then owned by Edna D. Thornbury, O. M. Cook, and Frances W. Edwards. The transfer was made to Martin by Thornbury, Cook and Edwards, who held said Certificate No. 824 and who had been doing business as Martin Truck Line. Thornbury, Cook and Edwards had become the holders of said Certificate by virtue of an order of the Commission made in 1947, authorizing its transfer to them from L. A. Ragsdale, to whom the Certificate had been originally issued. Certificate No. 824 was issued to Ragsdale, doing business as Martin Truck Line, on or about January 28, 1944.

The commodity description contained in Certificate No. 824 reads:

"Iron and Steel products, building material, cottonseed hulls and meal, cotton (in bales), fertilizer, cement and clay products, petroleum products, sugar, syrup, peanut meal and hulls, mixed feed, over Irregular Route No. 1."

Irregular Route No. 1 is defined in said Certificate No. 824 as follows:

"Between Birmingham, Alabama, and Mobile, Alabama, and all points within a radius of One Hundred twenty-five (125) miles of Birmingham, Alabama."

Prior to May 1, 1952, no holder of Certificate No. 824, had ever engaged in the intrastate transportation of petroleum products in bulk, but on that date Martin began such an operation. Although it did not own the required special equipment, Martin used equipment which had come into its possession under the terms of a "lease agreement" which it had entered into with Direct on or about April 18, 1952, on which date Martin and Direct also entered into an "option agreement", whereby Martin granted to Direct the right or option to purchase Certificate No. 824. Martin transported petroleum in bulk under the "lease agreement" with Direct until June 1, 1952, on which date Direct and Martin orally cancelled the "lease agreement" and the "option agreement", because the Commission had questioned the legality of Martin's operation on the ground that the "lease agreement" was not a bona fide lease of equipment, but was tantamount to a lease of operating authority.

On the following day, June 2, 1952, the respondents Houghland and Page, purchased all of the stock of Martin from Thornbury, Cook and Edwards, and at the time the suit was filed owned all of that stock except one share. Also on June 2, 1952, Direct and Martin entered into what is styled an "Equipment Lease", whereby Martin obtained from Direct, tank trailers needed to transport petroleum products in bulk, for as heretofore shown Martin owned no such equipment.

Subsequent to June 2, 1952, Houghland and Page, through their ownership of Martin's stock, directed and controlled all of its operations. And after June 2, 1952, Martin engaged in the intrastate transportation of petroleum products in bulk using the tank trailers leased from Direct, in connection with truck tractors leased by Martin from various individuals.

The intrastate transportation of petroleum products in bulk by Martin caused this litigation.

The complainants sought declaratory and injunctive relief. The respondents demurred to the bill and answered after their demurrer was overruled. We are not concerned here with the ruling on demurrer.

The cause was submitted on pleadings, on a stipulation of the parties and on certain documentary evidence.

Three questions were presented to the trial court for decision.

1. May Martin subsequent to the date of the purchase of all of its stock by Houghland and Page, continue to operate under Certificate No. 824, the Commission not having authorized the transfer of the said Certificate in accordance with the provisions of Section 15 of the Alabama Motor Carrier Act of 1939, Section 301(15), Title 48, Code of 1940, 1953 Cum.Pocket Part, Vol. 7, p. 107?

2. Does Certificate No. 824 authorize the transportation of petroleum products in bulk in tank vehicles?

3. What is the territorial authority authorized by Certificate No. 824?

As to those issues the trial court decreed:

1. Martin, subsequent to the date of the purchase of all of its stock by Houghland and Page, may continue to operate under Certificate No. 824, without an order of the Commission.

2. Certificate No. 824 authorizes the transportation of petroleum products in any form, "including petroleum products in bulk in tank trucks."

3. Martin is authorized to transport the named commodities, "between Birmingham, Alabama, and Mobile, Alabama, and between Birmingham, Alabama, and any point within a radius of One Hundred and twenty-five (125) miles of Birmingham, Alabama; that the said shipments may originate in Birmingham destined for Mobile or any point within a radius of One Hundred and twenty-five (125) miles of Birming-

ham; that said shipments may originate in Mobile destined for Birmingham; that said shipments may originate at any point within a radius of One Hundred and twenty-five (125) miles of Birmingham destined for Birmingham; * * *."

From the decree of the trial court, the respondent Martin appealed to this Court. The complainants below took a cross-appeal.

The several assignments of error made by Martin all challenge the correctness of the trial court's holding as to issue No. 3, which, as shown above, was "what is the territorial authority authorized by Certificate No. 824?"

The appellees cross-appellants have assigned as error the holdings of the trial court on the other two issues.

We will treat first the cross-appellants' assignments of error which challenge the correctness of the trial court's holding on the first issue or question as numbered above.

Section 15 of the Alabama Motor Carrier Act of 1939, 1953 Cum.Pocket Part, Vol. 7, p. 107, Code of 1940, Section 301(15), Title 48 reads:

"Subject to the provisions of section 301(12) of this title, any certificate or permit may be transferred or leased pursuant to such rules and regulations as the commission may prescribe, provided, however, that no such certificate or permit shall be transferred, or lease of any such certificate or permit approved, except after a finding by the commission that the proposed transferee or lessee is in all respects qualified under the provisions of this article to conduct the service or operation contemplated by such certificate or permit and that the proposed transfer or the approval of said lease is consistent with the public interest."

It is elementary that a corporation is for the most purposes an entity distinct from its stockholders. By its very nature the corporate property is vested in the corporation itself and not in the stockholders. The natural persons who procured its creation and have pecuniary interest in it are not the corporation. The Corporation, Martin Truck Line, Inc., and not Thornbury, Cook and Edwards, owned Certificate No. 824 and all other assets of the company at the time those individuals sold their stock to Houghland and Page. The stockholders are but the equitable owners of the corporations' property. State of Alabama v. L. P. Gas Transport Co., Inc., 260 Ala. 637, 71 So.2d 839; Boozer v. Blake, 245 Ala. 389, 17 So.2d 152; Autauga Co-operative Leasing Ass'n v. Ward, 250 Ala. 229, 33 So.2d 904.

The purchase of the stock of Martin by Houghland and Page certainly worked no change in the corporate entity or in the ownership of the assets of the corporation. It did not operate as a transfer of Certificate No. 824 from Martin to Houghland and Page.

There is nothing in the provisions last above quoted which delegates to the Commission the power to impose conditions on the ownership and transfer of the stock of a corporate certificate holder.

We are of the opinion that the provisions of Section 15 of the Alabama Motor Carrier Act of 1939 have no application where all of the stock of a corporate certificate holder is sold and that no order of the Commission, of the kind provided for in that Section, was necessary to enable Martin to legally operate under its Certificate No. 824 after the purchase of its stock by Houghland and Page. See Nicely v. Public Service Commission, 129 W.Va. 680, 41 S.E.2d 297; Corporation Commission v. Consolidated Stage Co., 63 Ariz. 257, 161 P.2d 110.

We will consider next the cross-appellants' assignments of error which question the trial court's holding on the second issue which was to the effect, that Certificate No. 824 authorizes the transportation of petroleum products in bulk in tank trucks.

It is the contention of the cross-appellants, complainants below, that Certificate

No. 824 does not authorize the transportation of petroleum products in bulk by tank trucks or trailers, but only authorizes the transportation of such products in dry freight or package form.

In dealing with this question we think it best to set out again the commodity description contained in the Certificate:

"Iron and Steel products, building material, cottonseed hulls and meal, cotton (in bales), fertilizer, cement and clay products, *petroleum products*, sugar, syrup, peanut meal and hulls, mixed feed, over Irregular Route No. 1." (Emphasis supplied.)

The trial court in its final decree had this to say with reference to this question: "As to (1) above, the complainants contend that Certificate No. 824 does not authorize the transportation of petroleum products in bulk in tank trailers, while the respondents contend that it does. The authorization under the Certificate includes the transportation of 'petroleum products' without limitation. The evidence shows that the Public Service Commission issues some certificates authorizing transportation of 'petroleum products in bulk', others 'petroleum products in packages' and others 'petroleum products'. Each of these designations has a distinct meaning. The court fails to see any ambiguity in the designation petroleum products' and, therefore, the court is of the opinion that Certificate No. 824 authorizes the transportation of petroleum products in any form."

The record in this case fully supports the finding that the Commission has issued some certificates giving the right to transport petroleum products without any limitation, yet, in other instances has granted authority to carriers to transport such products in bulk, to others the authority is given to transport such products in tank trailers only and still to other such carriers the authority to transport petroleum products is in package form only.

There is no ambiguity in the commodity description that calls for the application of the well-known rules of construction where there is an ambiguity.

Actually, what the cross-appellants seek to have the court do, is, to rewrite the Certificate provided for in the order of January 28, 1944.

We are unwilling, as was the trial court, on this collateral attack, to write into the Commission's order of January 28, 1944, words of limitation which the Commission did not include, although such words have been included in other Certificates.

■ We come now to consider the appellants' assignments of error. As shown above they all relate to the trial court's ruling on the territorial question, which we referred to above as Question No. 3.

Martin's contention in the court below in regard to the territorial issue is shown in that part of the stipulation of the parties hereafter set out:

"Insofar as the territorial authority authorized under A.P.S.C. Certificate No. 824 is concerned, Martin contends that the words 'between Birmingham, Alabama, and Mobile, Alabama, and all points within a radius of One Hundred and twenty-five (125) miles of Birmingham' includes authority to transport the commodities listed therein (1) from Birmingham to Mobile (2) from Mobile to Birmingham (3) from Birmingham to all points within a radius of One Hundred and twenty-five (125) miles of Birmingham (4) from Mobile to all points within a radius of One Hundred and twenty-five (125) miles of Birmingham and from said points to Mobile (5) between all points within a radius of One Hundred and twenty-five (125) miles of Birmingham, that is, from any points within a radius of One Hundred and twenty-five (125) miles of Birmingham, to Birmingham or any other point within a radius of One Hundred and twenty-five (125) miles of Birmingham."

The holding of the trial court on this issue was against the contention asserted by Martin in the following respects of which Martin here complains. Martin is not authorized to transport from Mobile to all

points within a radius of One Hundred and twenty-five (125) miles of Birmingham. It is not authorized to transport from points within a radius of One Hundred and twenty-five (125) miles of Birmingham to Mobile. It is not authorized to transport from one point outside of the City of Birmingham but within a radius of One Hundred and twenty-five (125) miles thereof to another point outside of Birmingham but within a radius of One Hundred and twenty-five (125) miles thereof.

The words used in Certificate No. 824 in defining or attempting to define Irregular Route No. 1, certainly create an ambiguity. The principal difficulty which gives rise to the ambiguity is the use of the word "between", followed by more than two points. But since the Commission in writing Certificate No. 824, included more than two points, it is necessary for us to consider the various alternative constructions.

Since the word "between" can be used properly only as a preposition connecting two points, it is necessary to imply at least one more "between", in the language used in the Certificate to define Irregular Route No. 1.

The construction which the trial court placed on that language does imply one "between" so as to make the descriptive words read: "between Birmingham, Alabama, and Mobile, Alabama, and 'between' Birmingham, Alabama, and all points within a radius of One Hundred and twenty-five (125) miles of Birmingham, Alabama."

To adopt the construction contended for by the appellant, it would be necessary to add the word "between" at least three times. Moreover, the construction contended for by appellant, would, in our opinion, result in territorial authorization far in excess of that which Ragsdale operated prior to the filing of his application under the "Grandfather Clause."

We are of the opinion, that the logical and reasonable construction, is that adopted by the trial court.

The questions presented on this appeal are not free from difficulty, but we are of the opinion that they were correctly decided by the court below, and that the decree appealed from should be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.