In the Matter of Sidney GURSEY, Bankrupt.

United States District Court
S. D. New York.
Jan. 6, 1964.

Murray Feigenbaum, New York City, for bankrupt.

Hahn, Hessen, Margolis & Ryan, New York City, for trustee, George A. Hahn, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

In this proceeding under § 14 of the Bankruptcy Act, 11 U.S.C. § 32, the trustee and the bankrupt petition for review of an order of the Referee in Bankruptcy, granting in part and denying in part the bankrupt's motion to dismiss the trustee's specifications of objection to his discharge. Since the bankrupt's motion was addressed to the legal sufficiency of the specifications, the facts alleged by the trustee therein must be taken to be true for the purposes of this proceeding, and are as follows:

On November 29, 1961, Sidney Gursey filed a voluntary petition in bankruptcy, annexed to which were a statement of affairs and a schedule of assets and liabilities. In his statement of affairs, the bankrupt failed to list all the loans which he had repaid during the previous year. Among the assets which he listed in the schedule of assets and liabilities were 40 shares of stock in Westfield Factors Corporation, representing a 20% interest in that company. On December 14, 1961, approximately two weeks after bankruptcy, Westfield made a payment in the nature of a partial distribution and/or liquidating dividend in the amount of $3,000 to each of its shareholders, including the bankrupt. The bankrupt immediately had the check which he received from Westfield certified, and on or about December 21, 1961 he endorsed and delivered it to his wife. On the following day he applied for and was granted leave to file amendments to his schedule of assets

and liabilities. No reference was made in the amendments to the check or its proceedings, nor did the bankrupt inform the trustee, who was appointed on January 5, 1962, that he had received this check. On February 13, 1962 the adjourned first meeting of creditors was held, at which the bankrupt falsely swore that he had not given certain answers to questions asked of him during a supplementary proceeding prior to the filing of the petition, and that he had not borrowed $1,000 from Elaine Gefter and subsequently repaid the same within one year prior to filing the petition.

The trustee filed an objection to the discharge of the bankrupt on February 1, 1963, based on five specified grounds, and on February 8, 1963 the bankrupt moved to dismiss specifications 1 through 4. After a hearing, the Referee dismissed specifications 2 and 3, but denied the motion with respect to specifications 1 and 4. The bankrupt's petition seeks to review the Referee's order insofar as it sustained specifications 1 and 4, while the trustee's petition seeks to review the order insofar as it dismissed specifications 2 and 3. I will consider the bankrupt's petition first.

### Specifications 1 and 4

Specification 1 charged that the discharge was barred under § 14, sub. c(1) of the Bankruptcy Act because the bankrupt had committed an offense punishable by imprisonment under 18 U.S.C. § 152 in that he had knowingly and fraudulently concealed from the trustee property belonging to the bankrupt estate. The objections of the bankrupt to this specification were (1) that the acts alleged were insufficient to constitute a violation of § 152 and (2) that they were not alleged with sufficient exactness. The Referee overruled both objections.

Under the first paragraph of § 152, "Whoever knowingly and fraudulently conceals from the * * * trustee * * * any property belonging to the estate of a bankrupt * * *" shall be fined or imprisoned, or both. The elements of a violation of § 152 are (1)

knowing and fraudulent (2) concealment (3) from the trustee (4) of property belonging to the estate of a bankrupt.

The allegations of specification 1 were that the bankrupt owned 40 shares of stock in Westfield Factors Corp. on November 29, 1961, the date on which he filed a voluntary petition in bankruptcy; that on December 14, 1961 he received a check for $3,000 from Westfield; that this payment was a partial distribution and/or liquidating dividend; and that the bankrupt knowingly and fraudulently concealed from the trustee receipt of this payment.

The bankrupt claims that proof of these facts would not establish a violation of § 152 because the check was not property of the bankrupt's estate and because there could be no concealment since the trustee had not been appointed when the check was received. Both claims are clearly without merit.

■■ Under § 70, sub. a(5) of the Bankruptcy Act, the trustee was vested with title to property owned by the bankrupt as of the date of the filing of the petition in bankruptcy, despite the fact that he was not appointed until after that date. Among this property were 40 shares of stock in Westfield Factors Corp. The check which the bankrupt received on December 14, 1961 from Westfield was paid in partial liquidation of his interest in the corporation, which interest had been included in his estate at the time the petition was filed. As such, it represented proceeds of property in the bankrupt's estate rather than after-acquired property, Matter of Scranton Knitting Mills, 23 F.Supp. 803 (M.D. Pa.1938); cf. Matter of Richter, 40 F. Supp. 758 (S.D.N.Y.1941), and must be treated as if it had originally been part of the bankrupt's estate. Since "the offense of fraudulent concealment under 18 U.S.C. § 152 is complete when the bankrupt has failed to disclose his property to the court officer within a reasonable time after the latter's appointment," 1 Collier on Bankruptcy (14 ed.) pp. 1325, 1326, the bankrupt's failure to reveal the existence of the check to the trustee was a violation of § 152. It follows that the referee was correct in overruling the claim that the acts alleged in specification 1 were insufficient to constitute a violation of § 152.

■■ The referee was also correct in overruling the claim that the allegations in specification 1 were not sufficiently exact. While it is true that "[s]pecifications of objections to a discharge * * * must be distinct and specific and be set forth with exactness," In re Scheffler, 68 F.2d 902, 903 (2 Cir. 1934), the averments need not have the technical certainty required of an indictment for the bankruptcy offense. 1 Collier on Bankruptcy (14 ed.) p. 1318. Although the trustee failed to allege specifically which paragraph of § 152 he claimed had been violated, the specification is couched in almost the exact words of the first paragraph of that section, and this is the provision allegedly violated. In any event, the specification sets forth the acts constituting the claimed violation of § 152 with sufficient exactness to inform the bankrupt what he must meet. The referee's denial of the motion to dismiss Specification 1 is accordingly affirmed.

Specification 4 charged that the discharge was improper under § 14, sub. c(1) because the bankrupt had committed an offense punishable by imprisonment under 18 U.S.C. § 152 in that he made false oaths in or in relation to his bankruptcy proceedings. The false oaths were alleged to have been made in an answer to a question in his verified statement of affairs and at an adjourned first meeting of creditors, at which the bankrupt denied under oath having given certain answers to questions asked of him at a supplementary proceeding examination prior to bankruptcy, and denied having engaged in a certain loan transaction within a year before bankruptcy. The bankrupt attacks this specification on the ground that his examination in the supplementary proceeding was neither under oath nor signed by him, and on the further ground that his sworn statements, even if untrue, were not ma-

terial to an issue which was material to the bankruptcy proceeding.

■■ With respect to the first objection, it is sufficient to observe that the bankrupt was charged with making false oaths in the adjourned first meeting of creditors and in his statement of affairs, not in the supplementary proceeding. Therefore, the fact that he was not under oath and did not sign the examination in the latter proceeding is totally irrelevant. Furthermore, as to the materiality of the allegedly false sworn statements, there can be no doubt. The questions to which the bankrupt allegedly gave false answers were all concerned with the subject of loans made to and repaid by the bankrupt prior to the filing of the petition. This was clearly a subject material to a proper investigation of the bankrupt's affairs, In re Scher, 21 F. Supp. 441 (E.D.N.Y.1937), and his answers to the questions were certainly material to that subject. The fact that some of the transactions inquired into allegedly occurred more than four months prior to the filing of the petition in no way alters the materiality of the inquiry or the answers given by the bankrupt. In re Slocum, 22 F.2d 282 (2 Cir. 1927). Accordingly, the referee's denial of the motion to dismiss specification 4 is affirmed.

### Specifications 2 and 3

■ The trustee's petition seeks to review the referee's order dismissing specifications 2 and 3. These specifications are based on § 14, sub. c(4) of the Bankruptcy Act which provides that a bankrupt shall not be discharged if he has

"at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors."

The acts alleged to have been committed by the bankrupt which constitute grounds for barring discharge under this section were the certification, endorsement, and delivery to his wife of the check which he received from Westfield Factors Corp. on December 14, 1961. Specification 2 charges that this was a transfer within the meaning of § 14, sub. c(4), while specification 3 charges that it was a concealment within the meaning of that section. Specification 3 also charges that the bankrupt made no reference to the receipt of the check in the petition to amend his schedules. The referee dismissed both specifications on the ground that a transfer after the filing of the petition in bankruptcy does not come within § 14, sub. c(4). Unable to find any decision on the question, he considered the language of the section and the comments of writers on the subject, and concluded that the words "at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy" should be liberally construed in favor of the bankrupt to mean "within one year prior to the filing of the petition in bankruptcy." Since the alleged transfer took place after the filing of the petition, the referee ruled that it did not constitute a bar to discharge under § 14, sub. c(4). I do not agree.

The referee based his interpretation of § 14, sub. c(4) entirely on statements appearing in 1 Collier on Bankruptcy, p. 1408, Nadler, "The Law of Bankruptcy," § 756, and Kaganowitz v. Manufacturers Trust Co., 145 F.2d 754 (2 Cir. 1944), to the effect that § 14, sub. c(4) applies to acts committed within twelve months prior to the filing of the petition in bankruptcy. These statements are not persuasive on the issue involved here. As the trustee points out, the referee misread the footnote in Collier; it was directed to the meaning of the phrase "twelve months" in § 14, sub. c(4), not the phrase "at any time subsequent to." Furthermore, since it does not appear that Kaganowitz involved acts occurring after bankruptcy, the language of the court is not a holding on that issue. The same is true of the statement

of Professor Nadler, which is unsupported by any authority directed to the precise question of acts which occur after bankruptcy.

The plain language of § 14, sub. c(4) indicates that it applies to acts occurring after the filing of the petition. The phrase "at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy" fixes only one demarcation in time, the earliest date on which an act can occur and still be within the section. By contrast, other sections of the Bankruptcy Act which fix time limits do so with reference to two demarcations in time. For example, § 60, sub. a provides that a transfer made "within four months before the filing * * * of the petition" is a preference under certain circumstances, and 67, sub. d(2) provides that a transfer made "within one year prior to the filing of a petition" is fraudulent under certain circumstances.

If Congress had intended to deal only with the acts of a bankrupt between a certain date and the filing of the petition, it could easily have done so by using the phrase "within one year prior to the filing of the petition." The phrase which Congress did use is hardly an appropriate substitute for that phrase. On the other hand, if Congress intended to deal with all the acts specified in § 14, sub. c(4), whether done before or after bankruptcy, a more appropriate expression than that which was used would be difficult to imagine.

The purpose of the Bankruptcy Act in general, and of § 14, sub. c(4) in particular, strongly supports the conclusion that the language of § 14, sub. c(4) must be given its natural meaning so as to include acts occurring after as well as prior to bankruptcy. The Supreme Court has declared that,

"It is the purpose of the Bankruptcy Act to convert the assets of the bankrupt into cash for distribution among creditors and then relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from obligations and responsibilities consequent upon business misfortunes." Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

The provisions of § 14 accomplish this purpose in two ways: first, by enabling a bankrupt to obtain a discharge; and second, by denying discharge to a bankrupt who fails to cooperate with the trustee and the court in their efforts to collect and distribute his property to his creditors. Discharge under § 14 is not available to the debtor whose dishonesty hinders the proper collection and distribution of his property. Barton Bros. v. Texas Produce Co., 136 F. 355 (8 Cir. 1905); In re Hammerstein, 189 F. 37 (2 Cir. 1911); In re Williams, 286 F. 135 (W.D.S.C.1921); Matter of Duggins, 46 Am.B.R. (N.S.) 671 (S.D.Cal. 1941), aff'd Duggins v. Heffron, 128 F.2d 546 (9 Cir. 1942). While Congress in enacting § 14, sub. c(4) may have been primarily concerned with dishonesty of a debtor prior to bankruptcy, it demonstrated its concern in the other provisions of § 14 with dishonesty of a debtor after bankruptcy as well. Since it is quite clear that commission of the acts enumerated in § 14, sub. c(4) after bankruptcy can be just as much of an impediment to the trustee and the court as the commission of the same acts before bankruptcy, and in view of the plain language of the statute, there is no reason why § 14, sub. c(4) should not be interpreted to bar the discharge of a bankrupt who transfers or conceals his property after bankruptcy with intent to hinder, delay or defraud his creditors.

The referee's decision and his dismissal of specifications 2 and 3 is, therefore, reversed and the trustee's petition is granted in all respects. The bankrupt's petition is in all respects denied and the referee's holding denying his motion to dismiss specifications 1 and 4 is affirmed.

It is so ordered.