In the Matter of Fred James SANDEFER d/b/a Fremar Corp., Inc. f/d/b/a Circle S Homes, Debtor.

Bankruptcy No. 81–05498.

United States Bankruptcy Court, N.D. Alabama, S.D.

Feb. 25, 1985.

Thomas B. Hanes, Birmingham, Ala., for debtor.

James J. Odom, Birmingham, Ala., for First City Developments.

Richard K. Mauk, Birmingham, Ala., Trustee.

## MEMORANDUM OPINION AND ORDER

STEPHEN B. COLEMAN, Bankruptcy Judge.

Fred James Sandefer, the debtor, is the owner of all of the capital stock in the Fremar Corporation, Inc. The Fremar Corporation, Inc. entered into bankruptcy simultaneously with Mr. Sandefer. The assets of the corporation were sold, the corporate creditors were paid in full from the proceeds and the surplus was paid into the bankruptcy estate of Mr. Sandefer. First City Developments Corp. is the holder of a judgment against Mr. Sandefer, a certificate evidencing which was filed in the Probate Office of Jefferson County, Alabama, more than ninety (90) days prior to the filing of the petition herein. First City Developments contends that its judgment lien attached to the surplus of the funds generated by the sale of the assets of Fremar; hence this objection to the claim of First City Developments filed by the Trustee herein.

■ Pursuant to Alabama Code § 6–9–211 (1975) a certificate of judgment filed for record constitutes a lien on all property of the judgment debtor which is subject to levy and sale under execution. A corporation, however, is an independent legal entity, separate and distinct from its shareholders. The legal title and ownership of corporate property is in the corporation. *Warrior River Terminal Co. v. State*, 257 Ala. 208, 58 So.2d 100 (1952); *Martin Truck Line, Inc. v. Alabama Tank Lines, Inc.*, 261 Ala. 163, 73 So.2d 756 (1954). A share of stock in a corporation merely entitles a shareholder to an aliquot portion of the proceeds of the assets of the corporation, over and above the indebtedness of the corporation. *Hall & Farley v. Alabama Terminal & Improvement Co.*, 173 Ala. 398, 56 So. 235 (1911). A shareholder is not, however, entitled to share in the assets of the corporation until a dividend is declared or except upon liquidation of the corporation. *First National Bank of Birmingham v. Perfection Bedding Co.*, 631 F.2d 31 (5th Cir.1980); *Jones Valley Finance Co. v. Tennille*, 40 Ala.App. 284, 115 So.2d 495 (1959), *cert. denied*, 270 Ala. 738, 115 So.2d 504 (1959). Until either of said events occur, the shareholders are but the equitable owners of corporate property. *First National Bank of Birmingham v. Perfection Bedding Co.*, 631 F.2d at 33; *Martin Truck Line, Inc. v. Alabama Tank Lines, Inc.*, 73 So.2d at 759. Admittedly, while a corporation is *in esse*, shareholders may, by unanimous consent and in the ab-

sence of objecting creditors, deal with, encumber or dispose of corporate property, as the equitable owners of that property, with virtual impunity. *See e.g., Muckle v. Fitts,* 5 F.Supp. 41 (S.D.Ala.1933), *modified, Salmon v. Fitts,* 67 F.2d 681 (5th Cir.1933); *First National Bank v. Winchester,* 119 Ala. 168, 24 So. 351 (1898). Even so, a mere equitable interest in property, except an equity of redemption and the perfect equity of a purchaser of real estate, is not subject to execution. *Powell v. Knox,* 16 Ala. 364 (1849). Ala.Code § 6–9–40 (1975). Therefore, the judicial lien of First City Developments could not have attached to the assets of the corporation, so as to thereby entitle First City Developments to the funds realized from the sale of those assets.

█ First City Developments contends, however, that the judicial lien did attach to the corporate stock of Fremar, *Johnston v. Bates,* 209 Ala. 16, 95 So. 375 (1923), and that the funds involved herein are the proceeds of the Fremar stock, *see, In re Gursey,* 224 F.Supp. 1008 (S.D.N.Y.1964); *Seifert v. Kepner,* 227 Md. 517, 177 A.2d 859 (Md.App.1962); BLACK'S LAW DICTIONARY 1084 (5th ed. 1979) (defining "proceeds") and, as such, must be applied first to the payment of the debt secured by the lien on said stock, namely, the debt owed to First City Developments. *Pearce v. Mills,* 190 Ala. 616, 67 So. 581 (1914); *Strictland v. Hardie,* 82 Ala. 412, 3 So. 40 (1887); *cf., First Nat. Bank v. Wellborn,* 237 Ala. 183, 186 So. 549 (1939) (Stock dividends issued after pledge of original shares in the hands of pledgor's administrators were subject to pledgee's lien). Whether or not First City Developments' contention is correct depends on whether the Fremar stock is "... subject to levy and sale under execution..." Ala.Code § 6–9–211 (1975). As a general rule it is essential to a valid levy on personal property that the officer executing the levy "... have a view of the property, and assume dominion over it, or bring it under his control, by such acts as would constitute him a trespasser but for the protection of the process, and so that he may have it present on the day and the

place of sale for delivery to the purchaser." *Kennedy v. Mary Lee Coal & Ry. Co.,* 93 Ala. 494, 9 So. 608 (1891). Historically, in the absence of statute, shares of stock in private corporations have been considered intangible, and in the nature of choses in action, and therefore not capable of manual caption and delivery. *White v. Rankin & Co.,* 90 Ala. 541, 8 So. 118 (1890); *Kennedy v. Mary Lee Coal & Ry. Co.,* 9 So. at 608. Hence, at common law, shares of stock were not subject to levy and sale under execution. *White v. Rankin & Co.,* 90 Ala. at 542, 8 So. 118; *Kennedy v. Mary Lee Coal & Ry. Co.,* 9 So. at 608. In order to remedy that "... defect in the law ...," *White v. Rankin & Co.,* 90 Ala. at 542, 8 So. 118, the Alabama legislature enacted a statute which declared that: "The shares or interest of any person in any incorporated company are personal property, and transferable on the books of the company in such manner as is or may be prescribed by the charter or articles of incorporation, or by-laws and regulations of the company; and such shares or interest may be levied on by attachment or execution, and sold as goods and chattels." Code of Alabama, 1876 § 2041. Pursuant to Code, 1876, § 2041, a levy could be made on corporate stock without the officer having possession of the stock certificate, by endorsement on the execution or other process, stating the number of shares levied on, and by giving notice of the levy to the custodian of the books of transfer. The object of that section was to provide a mode by which the sheriff could obtain "... constructive control, so as to prevent transfer of the shares on which the levy is made to any other person, ... and also to provide the mode of delivery to the purchaser by requiring the sheriff's certificate of the sale to be registered on the books of the corporation." *Kennedy v. Mary Lee Coal & Ry. Co.,* 9 So. at 609. Because shares of stock were made subject to levy and sale under execution by the statute, they were, by that fact, also subject to the lien of a properly recorded judgment. *Berney National Bank v. Pinckard, DeBardelaben & Co.,* 87 Ala.

577, 6 So. 364 (1889); *Oden v. Vaughn,* 204 Ala. 445, 85 So. 779 (1920).

█ In 1931, the Alabama statutes making stock subject to levy and sale under execution were repealed and the Uniform Stock Transfer Act was adopted.[1] Code of Alabama, 1928, §§ 7004(1)–(25). Section 13 of the Act, codified as Code, 1928, § 7004(13), provided that, "No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder enjoined." In 1965 the Uniform Act was repealed and supplanted by the adoption in this state of Article 8 of the Uniform Commercial Code. Ala.Code § 7–8–101 *et seq.* (1975). Section 7–8–317 provides: "No attachment or levy upon a security or any share or other interest evidenced thereby which is outstanding shall be valid until the security is actually seized by the officer making the attachment or levy but a security which has been surrendered to the issuer may be attached or levied at the source." No Alabama statute purports to govern the circumstances under which or means by which shares of stock in corporations, per se, may be levied upon by execution. Section 7–8–317 by its terms is applicable to securities, as that term is defined in Section 7–8–102. As an initial consideration, therefore, unless the shares of stock involved herein can be classified as securities, then that stock, according to the common law of this state, is not, under any circumstances, subject to levy and sale under execution, and, hence, not subject to the lien of a recorded judgment.

The term "security" is defined in Section 7–8–102 as (a) an instrument; (b) issued in bearer or registered form; (c) which is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium of investment; (d) is either one of a class or series or by its terms is divisible into a class or series of instruments; and (e) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer. Involved herein are shares of common stock in a closely held, privately owned corporation. It is unknown whether or not the stock is represented by a certificate. If not evidenced by a certificate or other writing, the shares are not "instruments," and plainly are not governed by Article 8, including Section 7–8–317.[2] If the shares are represented by

---

1. The cited statute existed through several recompilations, but remained, in essence the same until the Uniform Act was adopted. Code, 1876, § 2041; Code, 1886, § 1670; Code, 1907, § 3474; Code, 1923, § 6998; Code, 1928, § 6998. Hence, the *Johnston* case, cited by First City Developments for the proposition that corporate stock is subject to a judgment lien, was decided during the era in which such stock was made the subject of levy and sale specifically by statute. The decision reached in *Johnston,* therefore, was somewhat unavoidable. Admittedly, the *Johnston* decision was not expressly based on that code section. The court did, however, base its decision directly on *Berney National Bank v. Pinckard, DeBardelaben & Co.,* 87 Ala. 577, 6 So. 364 (1889). The *Berney* case in turn, was grounded squarely on the statute that made corporate stock subject to execution. It is unlikely, therefore, that *Johnston* retained much of its vitality subsequent to the abrogation of the statute in 1931.

Under Code, 1876, § 2401, and its progeny, it was the shares of stock and not the certificates representing them that were considered personal property and made the subject of levy and sale. *Oden v. Vaughn,* 204 Ala. 445, 451, 85 So. 779 (1920). Arguably, the Alabama legislature scrapped that longstanding position with the adoption of the Uniform Act. The purpose of the Act was to "... regulate transfers as respects the rights of living persons dealing among themselves in certificates of stock, and the creditors of stockholders." *Nashville Trust Co. v. Cleage,* 246 Ala. 513, 518, 21 So.2d 441 (1945). To accomplish that purpose, the Act necessarily gave "... value to the certificate of stock and its possession and ownership as between claimants." *Id.* The certificate, under the Act, became a valuable property right, *Jones v. State,* 236 Ala. 30, 182 So. 404 (1937), and the vehicle by which possession, title, ownership, and such rights and interests in certificated stock were obtained and transferred.

2. The declaration of Ala.Code § 10–2A–40 (1975) to the effect that shares in the stock of a corporation are personal property "... does not, *proprio vigore,* affix subjectivity to levy and sale under legal process." *Kennedy v. Mary Lee Coal & Ry. Co.,* 93 Ala. 494, 9 So. 608 (1891).

a certificate, it is unknown whether or not the certificate was issued in bearer or registered form. Section 7–8–102(c) declares that a security is in registered form if it specifies the person entitled to the security and when its transfer may be registered upon books maintained for that purpose on behalf of the issuer. This Court takes notice, however, that certificates representing shares in a corporation are, as a rule, issued in registered form; that is, issued in the name of a particular person. Furthermore, Ala.Code § 10–2A–40 (1975) requires that a certificate representing shares in a corporation state the name of the person to whom issued, and provides that shares are transferable on the books of the corporation. Therefore, any conclusion that the stock certificate, if it exists, was issued in other than registered form would be rather far-fetched. Moreover, each share of the Fremar stock certainly is "of a class" and represents a share or interest in the Fremar Corporation.

■ All other requirements having been considered, the determinative issue is whether or not the certificate representing shares in the Fremar Corporation, if it exists, is "of a type" commonly dealt in upon securities exchanges and markets or commonly recognized in this area as a medium of investment. Generally, only shares of stock in large, publicly held corporations are traded on security exchanges or markets. From that standpoint, certificates representing shares of stock in privately owned corporations are dissimilar to instruments traded on securities exchanges or markets. *Zamore v. Whitten*, 395 A.2d 435 (Me.1978). Furthermore, closely held stock certificates differ from publicly traded stock in the respect that an attribute of the latter is an expectation by the holder of obtaining profits in the form of dividends generated by the corporation through the entrepreneurial or managerial efforts of others. *Rhode Island Hospital v. Collins*, 368 A.2d 1225 (R.I.1977). On those

grounds, the courts in *Zamore* and *Rhode Island Hospital* held that certificates representing stock in closely-held corporations are not securities within the meaning of U.C.C. 8–102. On the other hand, the instrument involved herein, if it exists, is a stock certificates, and certainly, the securities exchanges and markets are primarily involved with the trading of stock certificates. Therefore, although closely-held stock certificates are not similar to stock commonly traded on public markets from the standpoint of numbers of shares and shareholders, or size of the corporations or enterprises involved, they are purely in their nature as instruments representing shares in a corporate enterprise, the same. They are instruments "of a type" publicly traded. *Katz v. Abrams*, 549 F.Supp. 668 (E.D.Pa.1982); *Gross v. Vogel*, 437 N.Y. S.2d 431 (1981); *Pantel v. Becker*, 89 Misc.2d 239, 391 N.Y.S.2d 325 (1977); *Kenny v. Porter*, 604 S.W.2d 297 (Tex.Civ.App. 1980); *Wamser v. Bamberger*, 305 N.W.2d 158 (Wis.App.1981). *See also, In re Kontaratos*, 10 B.R. 956 (Bkrtcy.D.Me.1981) (Criticizing and distinguishing *Zamore*). In any event, the purchase of shares of stock in a corporation, whether closely or publicly held, is a common medium for investing in an enterprise conducted in the corporate form. *Pantel v. Becker*, 391 N.Y.S.2d at 326. Therefore, the shares of stock in the Fremar Corporation, if represented by certificates, are securities within the purview of Ala.Code § 7–8–102 and are subject to the provisions of Article 8.

The history of Article 8 lends further support to the conclusion reached herein. The Uniform Act was repealed *in toto* upon the adoption of Article 8. Many provisions of Article 8, including Section 7–8–317, were modeled directly after provisions of the Uniform Act.[3] It is unlikely, therefore, that the Alabama Legislature intended that Article 8 would not cover all of the subject matter formerly governed by the Uniform Act; a conclusion supported by

---

**3.** The official comments to the following sections of Article 8 cite sections of the Uniform Act in the space entitled "Prior uniform statuto-

ry provision:,": 7–8–103, 7–8–204, 7–8–206, 7–8–207, 7–8–301, 7–8–306, 7–8–307, 7–8–308, 7–8–313, 7–8–315, 7–8–317, and 7–8–405.

the *Official Comment* located under Ala. Code § 7–8–101 (1975), wherein it is stated:

> The instruments covered are those included in the definition of "security" in Section 7–8–102.
>
> Thus the Article deals with bearer bonds, formerly covered by the Uniform Negotiable Instruments Law, and with registered bonds, not previously covered by any Uniform Law. It also covers *certificates of stock*, formerly provided for by the *Uniform Stock Transfer Act* and additional types of investment paper not now covered by any Uniform Act. (Emphasis added.)

■ Ala.Code § 7–8–317, as stated before, makes invalid the attachment or levy of a security unless the security is first seized. A properly filed judgment under Section 6–9–211 constitutes a lien only on property subject to levy and sale under execution. The judgment lien in Alabama is simply an extension of the statutory process provided for levy and sale by execution. Ala.Code § 6–9–1, *et seq.* (1975). The function of the lien is to grasp and hold property of the judgment debtor for subsequent liquidation by levy and sale under execution. In other words, the lien prevents the unencumbered disposal of that property until, by proper legal process, the property can be seized. The judgment lien was created, therefore, to serve the same purpose, albeit, in a less cumbersome fashion, as the execution lien which, formerly, attached to the personal property of the debtor when the writ was received by the officer authorized to execute it. Code of Alabama, 1886, § 2894. As stated by the Supreme Court of Alabama:

> This section of the Code [creating the execution lien], was not repealed by the said Act of 1886–87 [creating the judgment lien], and is still in force, so that a plaintiff may acquire and keep alive his lien on defendant's property in the county, by issuing execution on his judgment, and keeping it alive in the manner prescribed therefor, by section 2894 of the Code, or else, he may save himself that trouble and risk of keeping it regularly issued, and proceed under said act of 28th February, 1887, and record in the office of the probate court, a certified statement of his judgment, such as is required, and in the manner directed by said act of 1887, and the same will be accomplished, as if he had issued executions and kept them up,—the language of the statute being, "and every judgment or decree, so filed and registered, shall be a lien upon all the property of the defendant in such county, which is subject to levy and sale under execution." *Reynolds v. Collier*, 103 Ala. 245, 15 So. 603, 604 (1894). ( [ ] added.)

The judgment lien is "... intended to take the place and have the effect of an execution in the hands of the sheriff, as an instrumentality of creating and preserving a lien," and was designed to give a judgment creditor an equally efficacious lien by recording his judgment as he would have had if he had depended on the execution lien and kept it alive. *Id.* Under the current statute, of course, a writ of execution only becomes a lien on personal property subject to levy and sale from the time it is levied upon such property. Ala.Code § 6–9–60 (1975).

From a review of the cases and statutes cited above, it is evident that a judgment lien is dependent on the statutory process of execution for its subject matter. Necessarily, therefore, the process for effecting a judgment lien is subject to the same limitations imposed by statute on the execution process. In other words, a creditor can obtain an efficacious judgment lien on particular property only under the same circumstances, and at the same point in time, that he can obtain a valid levy on the property. For example, in *Gaston v. Marengo Imp. Co.*, 139 Ala. 465, 36 So. 738 (1904), the court held, by reason of a statute which prohibited the levy and sale of a growing crop, that a judgment lien could not attach to a growing crop. In *Warrick v. Liddon*, 230 Ala. 253, 160 So. 534 (1935), a judgment creditor filed a certificate of judgment and contended that the resulting lien attached to cotton in the possession of

a warehouseman. A statute then in effect provided that goods delivered to a warehouseman for which a negotiable receipt had been issued could not thereafter, while in possession of the warehouseman, be levied upon until the receipt was surrendered to the warehouseman or its negotiation was enjoined. The court held that the judgment lien did not, by virtue of that statute, fasten to the cotton while in the possession of the warehouseman. In neither the *Gaston* or the *Warrick* cases did the statute completely eliminate the property involved as a subject of levy and sale. The crops, once harvested, and the cotton, prior to and after its possession by the warehouseman, could each be levied upon to satisfy the respective creditors' judgments. The statutes merely created periods of respite, during which the properties could not be reached by the process of creditors. For the periods of time during which the properties were protected by the respective statutes, the properties were not subject to levy and sale upon execution, as required by the judgment lien statute, and, therefore, could not be encumbered by a judgment lien. Of note is the fact that in each case, the debtor was able to defeat the judgment lien by conveying the property away, unencumbered, during the time the property was not subject to levy.

Section 7–8–317, being in derogation or modification of common law, must be strictly construed. Only by virtue of that section is corporate stock made subject to levy and sale at all. As to the levy and sale of stock, the legislature saw fit to erect certain limitations, namely, that the stock be certificated, that is, a "security," and that the certificate be seized. A levy which does not comply with the requirements of the statute is "invalid." *See, e.g., Kennedy v. Mary Lee Coal & Ry. Co.,* 9 So. at 609. *Webster* defines *valid* as "having legal efficacy or force in truth or law." *Webster's New Collegiate Dictionary* (1981). Paradoxically, then, while levy may be had on a security by actual seizure, until such time, execution and levy directed toward a security is, in legal effect, a nullity. Likewise, a judgment lien, being merely an extension of the execution process, and dependent thereupon for its subject matter, is, as to an Article 8 security, void, prior to the seizure of that security. In other words, a security, unless seized, is not properly "subject to levy and sale upon execution," and, until then, therefore, cannot be encumbered by a lien created pursuant to Section 6–9–211.

The purpose of Section 7–8–317, as was that of its progenitor, Code, 1928, § 7004(13), is to avoid confusion and litigation over title to corporate stock by preventing attaching or levying creditors from securing rights paramount to those of good faith purchasers in possession of securities. See *Official Comment*, Ala.Code § 7–8–317 (1975). For that purpose, Section 7–8–317 would be impotent, if a judgment creditor *vis-a-vis* Section 6–9–211 were allowed to gain rights prior to good faith purchasers in possession of the security.

Based on the foregoing, the Court concludes that the judgment lien of First Developments did not attach to the stock of the Fremar Corporation nor to the money realized from the liquidation of Fremar's corporate assets, and

IT IS ACCORDINGLY ORDERED That the Trustee's objection, as to that point, is GRANTED, and Claim No. 8, the claim of First City Developments is allowed as unsecured.